**In re S.H., O.H., and N.H.**

**Appeal of S.H., O.H., and N.H.**

Superior Court of Pennsylvania.

Argued June 27, 2012.
Filed July 3, 2013.
Reargument Denied Aug. 19, 2013.

974

Barry M. Kassel and Marguerite. C. Gualtieri, Philadelphia, for appellants.

Patricia A. Korey, Public Defender, Philadelphia, amicus curiae.

Michael E. Angelotti, Philadelphia, for Dept. of Human Service, participating party.

Edward M. Flannery, Philadelphia, for father, participating party.

BEFORE: STEVENS, P.J., GANTMAN, and PANELLA, JJ.

OPINION BY PANELLA, J.:

In a matter of first impression, and one which we are told has significant statewide ramifications, we must decide whether an order for Permanent Legal Custody entered pursuant to the Juvenile Act prohibits a parent from later seeking primary custody. This question necessitates review of issues surrounding the interpretation of key provisions of the Juvenile Act; the best interests of children; the historic and statutory right of parents to enjoy the companionship and custody of their children; and correlation of the permanency policies set forth in the federal Adoption and Safe Families Act as well as the Juvenile Act.

The Court of Common Pleas of Philadelphia County permitted the father of the children in issue to challenge the permanent legal custody order previously entered by the trial court. This was the first step in Father's pursuit of primary custody of the children. Rather than granting the motion to quash filed by the Support Center for Child Advocates (Child Advocates), the trial court granted father a hearing on his petition to vacate the orders granting permanent legal custody (PLC) of the children to their maternal grandmother. For the reasons stated below, we affirm the well-reasoned decision of the Honorable Kevin Dougherty. We also deny the motion to dismiss this matter as moot filed by the Department of Human Services of the City of Philadelphia (DHS).

The facts of this case are not in dispute. The children were adjudicated dependent and committed to the custody of DHS on July 13, 2006. On November 4, 2009, after three years of periodic permanency hearings, DHS petitioned the trial court to award permanent legal custody of the children to Maternal Grandmother, their kinship foster parent. After a hearing on February 5, 2010, the trial court granted DHS' petition and discharged the children from Juvenile Court supervision.

Only one week later, Father filed an ill-advised petition for primary physical custody of the children, which the trial court summarily dismissed. Father filed a second petition on March 31, 2010. The trial court deemed that petition a motion to vacate the order granting permanent legal custody to Maternal Grandmother, and, on January 4, 2011, issued a rule on DHS to show cause why Father's motion should not be granted. On May 6, 2011, the Child Advocates, on behalf of the children, filed a motion to quash Father's petition for lack of jurisdiction. The trial court heard the two motions at a hearing on May 25, 2011, and denied Father's motion to vacate permanent legal custody and the Child Advocates' motion to quash Father's motion. *See* N.T. 5/25/11, at 9. The trial court

entered its order denying Father's motion to vacate permanent legal custody on May 25, 2011. On June 15, 2011, the trial court entered orders denying the Child Advocates' motion to quash, and certifying the matter for immediate interlocutory appeal.

On August 19, 2011, this Court denied the Child Advocates' petition for an interlocutory appeal and, instead, ordered the Prothonotary of this Court to assign a direct appeal number pursuant to Pa. R.A.P. 1316(a)(1). DHS filed with this Court a motion to dismiss the matter as moot on January 23, 2012. In an order entered on February 22, 2012, this Court denied DHS' motion, without prejudice to raise the issue in its brief.

Although the Child Advocates present two formal issues in their brief, their position is that an order for permanent legal custody bars a parent from contesting primary custody at a later date. Ancillary to this contention is their argument that the trial court lacks statutory authority or jurisdiction to entertain a parent's request for modification of a permanent legal custody order. The justification for their position is, well-meant and conscientious in light of their advocacy for children:

> Across the Commonwealth, hundreds of families who have assumed Permanent Legal Custody of children, provided them with needed permanency, and saved them from a life in foster care, are being forced back into court, under circumstances where the petitioners have no valid cause of action....

Child Advocates' Brief, at 1.

To answer the Child Advocates' questions we must interpret sections of the Juvenile Act and the Adoptions and Safe Families Act, 42 U.S.C. §§ 671–675. As statutory interpretation implicates a question of law, our scope of review is plenary and our standard of review is *de novo*. *See D.R.C. v. J.A.Z.*, 612 Pa. 519, 31 A.3d

677, 681 (2011). Our goal in interpreting a statute is to ascertain and effectuate the intent of the legislature. *See* 1 Pa.Cons. Stat.Ann. § 1921(a). "The statute's plain language generally offers the best indication of legislative intent." *Martin v. Commonwealth, Dept. of Transportation, Bureau of Driver Licensing*, 588 Pa. 429, 438, 905 A.2d 438, 443 (2006).

We must first address the issues raised by DHS in its motion to quash this appeal as moot. DHS claims that the Child Advocates' issues on appeal are not reviewable because the consequence of the order entered June 15, 2011, is that there is no longer an actual claim or controversy for this Court to address. "If events occur to eliminate the claim or controversy at any stage in the process, the case becomes moot." *J.S. v. Whetzel*, 860 A.2d 1112, 1118 (Pa.Super.2004). This Court has stated, however, that even if a claim becomes moot, we may still reach its merits if "the question presented is capable of repetition and apt to elude appellate review...." *Orfield v. Weindel*, 52 A.3d 275, 278 (Pa.Super.2012).

The Child Advocates argue persuasively that the issues they raise are capable of repetition and, if we permit the mootness doctrine to apply to them, will evade appellate review. It is clear that the issues presented here are capable of repetition; this is demonstrated by the fact that the filing that triggered this appeal is at least the third such filing by the parents, as well as the possibility that every child subject to an order of permanent legal custody represents a potential filing of just such a petition. For this reason alone, we find that the questions presented for our review are not moot, and, therefore, we must review them.

Turning then to the contentions of the Child Advocates, they initially argue that,

once a child is the subject of an award of permanent legal custody, the Juvenile Act, specifically Section 6351(a)(2.1), limits the jurisdiction of the trial court to issues of support and visitation, and forecloses the trial court from considering the issue of primary custody.[1] Section 6351(a)(2.1) provides:

> **(a) General rule.**—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:
>
> . . .
>
> (2.1) Subject to conditions and limitations as the court prescribes, transfer permanent legal custody to an individual resident in or outside this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child. A court order under this paragraph may set forth the temporary visitation rights of the parents. The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.

42 Pa.Cons.Stat.Ann. § 6351(a)(2.1).

The Child Advocates interpret this language to mean that once a trial court has made an award of permanent legal custody, it lacks jurisdiction to change primary custody. They explain their reasoning as follows:

> Utilizing a broad interpretation that far exceeded a required narrow reading of the statute, the [t]rial [c]ourt transformed [Father's] Petition for Primary Physical and Legal Custody into a "Motion to Vacate the PLC Order" and brought the matter into Juvenile Court. Neither the Juvenile Act nor the Domestic Relations Code vests the [trial] court with the authority to do so, nor to create a cause of action for Father under the Juvenile Act where none exists. The guidance of the statute is clear: a Parent's Petition for Primary Physical and Legal Custody, whether termed a Motion to Vacate a PLC Order or identified by any other name, should be dismissed outright as an impermissible filing without any basis in the law. With no standing to bring such a petition and no court authorized to hear the petition, there is no case. Permanent is permanent.

Child Advocates' Brief, at 10–11.

 We begin our analysis with a review of the statutorily created program known as "permanent legal custody." In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated. *See In re H.V.*, 37 A.3d 588, 589 (Pa.Super.2012). The custodian is typically provided a financial subsidy for the child by the local county children and youth agency. The subsidy component is

---

1. In Philadelphia, custody actions in the Family Court Division are docketed in the Domestic Relations Branch, as are support and visitation matters. Dependency cases are handled in the Juvenile Branch. As will be discussed *infra*, Judge Dougherty decided that the disposition of Father's petition was to be in the Juvenile Branch in order to (1) assure that the Department of Human Services remained a party and (2) address issues regarding the subsidized permanent legal custody arrangement and accountability of public funds. *See* Trial Court Opinion, 9/14/11, at 10.

generally an integral component when permanent legal custody is considered a viable option.[2]

■ A trial court may consider permanent legal custody, upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if subsidized permanent legal custodianship (SPLC) were granted. *See In re S.B.*, 208 Pa.Super. 21, 943 A.2d 973, 983–984 (2008). Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. *See id.* In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare. *See id.; see also* 42 PA.CONS.STAT.ANN. § 6351(f.1).

The changes to Pennsylvania's Juvenile Act were the result of the enactment of the Adoption and Safe Families Act (ASFA) of 1997.[3] The ASFA was Congress' response to the concerns of foster care drift and unsafe and unstable reunification efforts. *See* 83 Temp. L.Rev. 369, 394 (Winter 2011). Under the ASFA, states must hold permanency planning hearings within 12 months of the date a child enters care, and then every 12 months thereafter, to review and approve the permanency plan for the child. If a determination is made by the court that "reasonable efforts" to reunite the child with a parent are no longer required, a permanency planning hearing must be held.

In those cases where reunification is not appropriate, adoption is viewed as providing the greatest degree of permanence. In some situations, however, adoption may not be a realistic or appropriate option. For example, some older children, who are well familiar with and have affection for their birth parents, may object to termination proceedings. There are also special needs children for whom placement in an adoptive home is extremely difficult. Consequently, in those cases, attention may be focused on alternative permanency options such as guardianship, or custodial arrangements (PLS), preferably with relatives.

■ As stated above, the Child Advocates' interpretation of Section 6351(a)(2.1) is that it limits the jurisdiction of the trial court to issues of support and visitation. However, a plain reading of the words of the statute reveals that while the appropriate division of the trial court must exercise jurisdiction over support and visitation issues, it does not *limit* the jurisdiction of the trial court to those two issues. By using the term "permanent" in describing legal custody, the legislature intended to end the supervision of the children by the county agency and discontinue the case from the periodic reviews in the juvenile

---

2. We have previously explained a subsidized permanent legal custody arrangement as follows:

> In 2001, Pennsylvania created a subsidy program, SPLC, [subsidized permanent legal custody] which provides financial support for families willing to become permanent legal custodians pursuant to section 6351(f.1)(3). SPLC transfers permanent legal custody to the [dependent] child's legal custodian without requiring the termination of natural parental rights. When deemed appropriate, the trial court has the power to permit continued visitation by the [dependent] child's natural parents. To be eligible for SPLC, the legal custodian must meet all of the requirements for foster parenthood, submit to an annual eligibility evaluation, and have the ability to provide for the child without court supervision.

*In re B.S.*, 861 A.2d 974, 977 (Pa.Super.2004).

3. P.L. 105–89, 111 Stat. 2155 (1997).

court division. This language does not confer or divest parents of any substantive rights but rather addresses the proper venue for visitation and support matters following the grant of a permanent legal custody arrangement.

In addressing the argument raised by the Child Advocates, the trial court explained the consequences of divesting the court of jurisdiction over the question of custody where it has made an award of permanent legal custody. We quote the trial court here, with approval:

> This Court is attentive that the dependency petitions, which brought the children to its arms, were discharged and that the Court was relieved of its continued obligation to review the placement of the children, pursuant to the Section 6351 of the Juvenile Act, upon discharge of the dependency petitions. The Court is equally attentive that the parental rights of [Mother and Father] were never terminated. Notwithstanding the urging of counsel for the children, this Court is of the belief that absent an order terminating parental rights, a parent's fundamental right to care and companion his or her children should not permanently be deprived. The action taken by this Court effectuates the intended purpose of the Juvenile Act that a court is to continue to separate children from their parents only when necessary. Moreover, absent an order terminating parental rights, vacating a permanent legal custody with visitation award entered pursuant to Section 6351(a)(2.1) of the Juvenile Act may very well serve to provide for the better care, protection, safety and wholesome

mental and physical development of children.

Trial Court Opinion, 9/14/11, at 8–9. The trial court expressed concern that the Child Advocates were actually requesting the court to stand idle and disregard the best interests of the children, and ignore an opportunity to enhance the quality of the children's lives if the parents were able to meet their standard of proof:

> Certainly, our legislature could not have intended such a consequence. Nor, should I think that such indolence would resonate well with fair minded people. Here, I believe that circumstance require that I exercise the authority of the Court to review evidence relative to the competency of the parent for the purpose of custody upon the prospect that it may serve to advance the interest of the children.

*Id.,* at 9.

We agree with the trial court that the legislature could not have intended the consequence the Child Advocates suggest here because, if the trial court were to refuse to revisit the question of physical custody, that would amount to a *de facto* termination of Mother's and Father's legal and primary physical custodial rights. Our legislature could not have intended that result because the legislature has provided a process to terminate parental rights in separate, specific legislation. *See* 23 Pa.Cons.Stat.Ann. § 2511.

 A trial court must utilize the highest civil standard of proof, "clear and convincing evidence," when addressing a petition to terminate parental rights.[4] When a trial court considers and grants a permanent legal custody order, it does not

---

4. *See Kimock v. Jones,* 47 A.3d 850, 855 (Pa.Super.2012) (quoting *In re B.L.L.,* 787 A.2d 1007, 1012–1014 (Pa.Super.2001) ("[T]ermination of parental rights for all practical purposes ends the parent/child relation-

ship as unequivocally as the death of the child, ... and for that reason ... the standard of proof [is] clear and convincing evidence.")).

engage in this heightened review process. "Upon filing a SPLC petition, DHS is required merely to prove that reunification or adoption is not best suited to the child's safety, protection and physical, mental and moral welfare." *In re B.S.*, 861 A.2d 974, 977 (Pa.Super.2004). Clearly, the procedural and substantive safeguards utilized to protect the rights of parents in termination cases are not applicable in PLC cases.

■ Our interpretation is consistent with the existing legal bases for, and fundamental right of, parents to the care and custody of their children when that care and custody serves the best interests of the children. It has long been established that the right to make decisions concerning the care, custody, and control of one's children is one of the oldest fundamental rights protected by the Due Process Clause of the United States Constitution. *See Hiller v. Fausey*, 588 Pa. 342, 358, 904 A.2d 875, 885 (2006), *cert. denied,* 549 U.S. 1304, 127 S.Ct. 1876, 167 L.Ed.2d 363 (2007).

■ Our law in Pennsylvania further provides that any infringement of this right "requires strict scrutiny review to determine whether the infringement is supported by a compelling state interest and if the infringement is narrowly tailored to effectuate that interest." *Schmehl v. Wegelin*, 592 Pa. 581, 588, 927 A.2d 183, 186–187 (2007), *cert. denied,* 552 U.S. 1022, 128 S.Ct. 619, 169 L.Ed.2d 394 (2007). With the exception of a termination of parental rights proceeding, we cannot imagine a more restrictive infringement than the outright denial of the right to seek primary custody of one's children, without regard to a best interests analysis, as argued by the Child Advocates.

■ In applying strict scrutiny to Section 6351(a)(2.1), we readily acknowledge the state's compelling interest in protect-

ing the health and emotional welfare of children. As stated in Section 6301 of the Juvenile Act, the Act should be interpreted and construed to "preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.Cons.Stat.Ann. § 6301(b)(*l*). Certainly, Section 6351(a)(2.1) addresses the need for an alternative permanent placement when reunification is not appropriate. As a prelude to a PLC order, at permanency hearings, the trial court must determine whether a county child agency may discontinue services in light of aggravated circumstances. *See* 42 Pa.Cons.Stat.Ann. § 6351(f). In view of the liberty interest of parents in the care, custody and control of their children, the trial court here correctly found the statute to be narrowly tailored in that it also preserved a parent's right to seek primary custody if it served the best interests of the child.

Equally supportive of our determination are the provisions in Pennsylvania's custody laws. The statute in effect at the time of the trial court's decision, 23 Pa.Cons. Stat.Ann. § 5310 (repealed), specified that *any* order for the custody of the child entered by *any* court of the Commonwealth could be modified at *any* time. Our current Child Custody Act, at Section 5324, specifies that, without limitation, a parent of a child may file an action "for any form of physical custody or legal custody." 23 Pa.Cons.Stat.Ann. § 5324. Moreover, "any custody order entered by a court of this Commonwealth" may be modified if it serves the "best interests of the child." 23 Pa.Cons.Stat.Ann. § 5338. Clearly, our legislature did not exclude from parents the right to petition to modify a custody order entered in a dependency proceeding. The language of the statutory sections is plain and unambiguous; the provisions allow for modification of

*any* existing custody order *any* time the best interest of the child requires such disposition.

We also find guidance by the interpretation of Section 6351(a)(2.1) by the Pennsylvania Department of Public Welfare (DPW), Office of Children and Youth and Families (OCYF). In Bulletin 3130–10–02/3140–10–03 (July 30, 2010), DPW described the guidelines and requirements for county children and youth agencies to choose permanent legal custodianship as a permanency option. The Bulletin separately addresses the rights and duties of the permanent legal custodians and parents. Specifically, in relation to parents, the Bulletin states:

*PARENTAL RIGHTS AND DUTIES:*

If parental rights have not been terminated when a PLC arrangement occurs, the agency should discuss the permanency plan with the parents, including the anticipated benefits to the child. That discussion should include informing them of the specific rights and duties that remain with the parents, including those outlined below, unless otherwise specified by the court.

. . .

● The right to petition the court for custody of the child;

. . .

DPW, OCYF Bulletin, 3130–10–02/3140–10–03, at 11.

The Bulletin issued by DPW is commonly known as a guidance document:

Non-legislative rules—more recently couched (in decisions and in the literature) as "guidance documents"—comprise a second category of agency pronouncements recognized in administrative law practice. These "come in an abundance of formats with a diversity of names, including guidances, manuals, interpretive memoranda, staff instructions, policy statements, circulars, bulletins, advisories, press releases and others." Robert A. Anthony, Commentary, *A Taxonomy of Federal Agency Rules*, 52 ADMIN. L.REV. 1045, 1046 (2000). When such documents fairly may be said to merely explain or offer specific and conforming content to existing statutes or regulations within the agency's purview, they are regarded as "interpretive rules". . . .

*Northwestern Youth Services, Inc. v. Com., Dept. of Public Welfare*, —— Pa. ——, 66 A.3d 301, 310–11 (2013). "It is well settled that when the courts of this Commonwealth are faced with interpreting statutory language, they afford great deference to the interpretation rendered by the administrative agency overseeing the implementation of such legislation." *Winslow–Quattlebaum v. Maryland Ins. Group*, 561 Pa. 629, 635, 752 A.2d 878, 881 (2000). We are guided by administrative discretion in interpreting legislation, and should not disturb that discretion "within an agency's own sphere of expertise absent fraud, bad faith, abuse of discretion or clearly arbitrary action." *Id.* We find no arbitrary action or abuse of discretion with DPW's Bulletin, and there is no allegation whatsoever of fraud or bad faith.

Our decision is further buttressed by the fact that DPW's interpretation was first published in 2003 in Bulletin 3130–03–01/3140–03–07, which was later rescinded and replaced by Bulletin 3130–10–02/3140–10–03. It goes without saying that, obviously, the legislature could have amended the statute if it disagreed with DPW's interpretation. Furthermore, this interpretation was then incorporated into the Pennsylvania Judicial Deskbook published by the Juvenile Law Center, "a distinguished child advocacy association," *In In-*

*terest of G.C.,* 449 Pa.Super. 258, 673 A.2d 932, 945 (1996), as follows:

> Because PLC or SPLC, according to the OCYF Bulletin, permits parents to petition the court for a change in custody, parents who may not be able to rehabilitate themselves within the period of time children can remain in temporary foster care may be able to reunify with their child following the establishment of a PLC or SPLC. Of course, the best interests of the child will be the primary consideration in a custody dispute between a parent and a legal custodian. Another example of where PLC or SPLC may be an appropriate permanency option is a child who has a bond with a parent that will preclude termination of parental rights, thus ruling out adoption. In these cases, PLC or SPLC may be the best course of action.

*PA Judicial Deskbook,* Juvenile Law Center, 4th ed. (2004), at 151, 155–156.

After our review of the law, the record in this matter, and the arguments of counsel, we find that neither the Juvenile Act nor the Adoption and Safe Families act of 1997 prohibit a parent from petitioning the trial court to regain custody of a child who is the subject of an award of permanent legal custody.

Before we close, we are compelled to consider the Child Advocates' argument that to allow a parent to challenge an award of permanent legal custody will disrupt the lives of the affected children and their families. The Child Advocates argue that if we were to permit parents to request primary custody following an order of permanent legal custody, it would place children and families "within the revolving door of indeterminate litigation." Child Advocates' Brief, at 21.

This concern has been repeatedly addressed in Pennsylvania, and our well-established principle of custody law provides that the courts are always open to review a child's best interests. Although there is always the possibility of spurious petitions, we are mindful of the sentiment espoused in *Burnett v. Verstreate,* 742 A.2d 700 (Pa.Super.1999), in which parents were seeking custody after the grandparents had successfully cared for their grandchild for a number of years:

> [The grandparents'] care of the child was all that could be wished, however, that alone cannot be the determining factor in this case. If such were the case, no parent who is out of custody, regardless of the reformation and improvement in lifestyle or parenting ability, could obtain the return of custody. The record supports the trial court's belief in the mother's redemption and also mandates she be given the opportunity to exercise her right as a parent ...

*Id.,* at 703; *see also Jordan v. Jackson,* 876 A.2d 443, 456 (Pa.Super.2005).

Although we are sensitive to the concern over frequent and spurious petitions, our courts have always found that, absent a termination proceeding, we should not adopt a policy which taints a parent forever. In keeping with the mandates of the Adoption and Safe Families Act, the process of directing permanent legal custody, with or without subsidy, which is challengeable by parents, serves the dual goals of "safety, permanency and well-being for children" with the availability of custody modification when the current arrangement is no longer in the child's best interest.

Additionally, not every filing by a parent will warrant a hearing. As in this case, the trial court will act as a gatekeeper to make a preliminary determination as to whether the respective parent has pled sufficient facts to demonstrate a change in custody

serves the best interests of the child in issue. This initial determination will weed out specious applications and keep children out of court unless a valid claim is presented.[5]

Policy considerations actually compel the opposite approach from that contended by the Child Advocates. We find no justification in keeping a child in a court ordered custodial arrangement, typically subsidized at taxpayer expense, when a parent presents a plan which brings the child back into the family unit and serves the child's best interests.

Lastly, we support Judge Dougherty's decision to assign Father's petition to the Juvenile Branch of the Philadelphia trial court. Of course, each judicial district will have to implement policies and procedures which best suit the organization of the common pleas court in that respective district. Under the judicial organization in Philadelphia County, Judge Dougherty held that the Juvenile Branch of the Family Court division, rather than the Domestic Relations Branch, was the appropriate forum for consideration of Father's petition to vacate the order of permanent legal custody. This way, Judge Dougherty explained, the division of the court which has had experience with the family will preside. Additionally, the Department of Human Services, with their history of involvement with the child in issue, will be a party. It would be best if the Orphans' Court Procedural Rules Committee were to consider, and adopt if necessary, uniform statewide rules to properly process these types of cases.

Orders affirmed. Motion to dismiss appeal is denied. Jurisdiction relinquished.

President Judge STEVENS notes his dissent.

---

5. It bears repeating that parents will only be able to obtain primary custody upon a showing that it serves the best interests of the child. We are mindful of the comment from Amici Curiae, Community Legal Services, in relation to the facts of this case, with which we agree: "The procedural history in this case ... arguably presents a worst case scenario...." Brief of Amici Curiae, Community Legal Services, at 29. Certainly, Judge Dougherty exercised wise judgment in denying Father's request for custody in this case.