J-S37031-14

2014 PA Super 185

| | |
|---|---|
| IN THE INTEREST OF: S.J., a Minor | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: YORK COUNTY OFFICE OF CHILDREN, YOUTH AND FAMILIES, | |
| Appellant | No. 469 MDA 2014 |

Appeal from the Order entered February 11, 2014,
in the Court of Common Pleas of York County, Juvenile
Division, at No(s): CP-67-DP-0000970-2008

BEFORE: LAZARUS, STABILE and MUSMANNO, JJ.

OPINION BY MUSMANNO, J.: **FILED AUGUST 27, 2014**

York County Office of Children, Youth and Families ("CYF") appeals from the 90-day status hearing Order entered by the juvenile court on February 11, 2014. By that Order, the juvenile court found that S.J. ("Child") (born in October of 2008) was doing well in the care of her maternal great aunt, A.H. ("Aunt"). Aunt is Child's Subsidized Permanent Legal Custodian ("SPLC").[1] The juvenile court found that although Child's mother, I.L. ("Mother"), and father, D.J. ("Father"), were exercising partial physical custody, Child would continue in the care of Aunt. The juvenile

---

[1] "In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act." *In re S.H.*, 71 A.3d 973, 977 (Pa. Super. 2013). Under such an arrangement, "the juvenile court discontinues intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis to a custodian." *Id.* Under this arrangement, parental rights are not terminated. *Id.*

court's Order denied CYF's request to terminate the court's jurisdiction, and scheduled a review hearing for January 27, 2015. We reverse and remand with instructions.

In its Opinion filed pursuant to Pa.R.A.P. 1925(a), the juvenile court set forth the relevant history of this appeal as follows:

> [Child] was born premature … to [Mother], a dependent youth, age 16 years at the time of [Child's] birth…. On November 17, 2008, legal and physical custody of [Child] was awarded jointly to []CYF and Mother; [Child] was placed with Mother at Pinkney's Vineyard of Faith, where Mother had been previously placed. [Subsequently, Child] was adjudicated dependent … and continued in placement with Mother at Pinkney's Vineyard.

> In March of 2009, paternity of [Child] was established in [Father]. A visitation schedule was established for Father. Father appeared at one visit in April of 2009, but then failed to have contact with [Child] or []CYF until January 2010. Mother turned 18 in November of 2009, but elected to remain in care.

> [Child] and Mother began home passes from Pinkney's Vineyard to the home of [Aunt] between the March review hearing and a 90-day hearing held on May 26, 2010…. On May 26, 2010, [the juvenile hearing officer] noted that[,] during the time that Mother and [Child] were on home passes, Mother relinquished parenting of [Child] to [Aunt]….

> A permanency review hearing occurred on August 11, 2010. [Aunt] … was approved for kinship care…. Compelling reasons not to terminate parental rights were stated by []CYF to be the bond with Mother and the fact that [Child] and Mother had always been placed together.

> \* \* \*

> [At a November 2010 review hearing,] concerns were raised regarding Mother's parenting of [Child] in the kinship home and her poor decision[-]making. On November 17, 2010,

- 2 -

[]CYF filed a [M]otion to change the goal from reunification with a parent to permanent legal custodianship with [Aunt].

On December 16, 2010, a hearing was held to address the change of goal. … [On that same date, the juvenile court entered an Order changing the goal for Child to subsidized permanent legal custodianship.] …

*     *     *

On April 8, 2011, Mother left the kinship home and failed to return. On April 15, 2011, []CYF filed a [M]otion to terminate juvenile court jurisdiction for Mother. A hearing was scheduled for April 19, 2011, to coincide with Mother's permanency review hearing. As of the date of the hearing, Mother indicated that she wished to remain in care[;] however[,] it was determined that a different foster care home was needed. [Child] remained in the kinship foster home and a visitation schedule was developed for Mother and [Child].

On April 20, 2011, []CYF presented a [M]otion to terminate [the] court['s] jurisdiction[,] as the subsidy for [Aunt's kinship care] had been approved by the [York] County Commissioners. The proposed Order[,] prepared by [the] []CYF solicitor[,] specifically noted the hearing previously scheduled for December 1, 2011, to address the status of [Child]….

Juvenile Court Opinion, 3/25/14, at 4.

On April 25, 2011, the juvenile court entered an Order terminating its jurisdiction in the dependency/SPLC matter as to Child. The Order directed that Child's visitation with Mother and Father be continued.[2] The Order further provided, in relevant part, as follows:

Although Juvenile Court jurisdiction is being terminated, the Court has directed that all parties appear on Thursday, December 2, 2011, at 9:30 a.m. … before the Honorable Maria

---

[2] Mother left her new foster home on May 2, 2011. On May 16, 2011, the juvenile court entered an Order terminating its jurisdiction over Mother.

Musti Cook, so that the Court may receive an update on the minor child and her parents.

Juvenile Court Order, 4/25/11.

At the December 2011 status hearing, counsel for CYF objected to the juvenile court's ongoing review of the dependency/SPLC matter. N.T., 12/1/11, at 14. Nevertheless, the juvenile court entered an Order scheduling a status review hearing for May 12, 2012. Juvenile Court Order, 12/2/11. CYS timely filed an appeal of that Order at No. 29 MDA 2012, which this Court quashed as interlocutory and premature.[3]

Father subsequently filed a Complaint for Custody. On October 9, 2012, a Stipulated Order for Custody was entered awarding joint legal custody to Father and Aunt.[4]

On February 12, 2013, the juvenile court conducted a status hearing in the dependency/SPLC matter. Father did not appear at the hearing, although the juvenile court judge was apprised of the Stipulated Order for Custody. At that time, CYF requested that the juvenile court again

---

[3] This Court quashed the appeal because the December 1, 2011 Order neither granted nor denied a status change in Child's disposition, and contemplated further proceedings, citing **Adoption of R.J.S.**, 889 A.2d 92, 95 n.5 (Pa. Super. 2005) (stating that, generally an order that contemplates further proceedings is interlocutory and unappealable). **See In the Interest of: S.J., A Minor**, No. 29 MDA 2012 (Order) (Pa. Super. filed on February 2, 2012).

[4] Father's Custody Complaint and the subsequent custody proceedings are not part of the certified record in the instant matter. The juvenile court judge in the dependency matter was not assigned to the custody proceedings.

terminate its jurisdiction over the dependency/SPLC matter, and refrain from scheduling additional status hearings. On February 11, 2014, the juvenile court entered an Order refusing to terminate its jurisdiction over the dependency/SPLC matter. Juvenile Court Order, 2/11/14. The juvenile court scheduled a review hearing for January 27, 2015. CYF timely filed a Notice of Appeal and Concise Statement of Errors Complained of on Appeal.

CYF now presents the following claims for our review:

A. Did the [juvenile] court err when it denied the request of [CYF] to terminate juvenile court supervision despite the previous Order filed April 25, 2011, which terminated juvenile court supervision?

B. Did the [juvenile] court err in scheduling a subsequent hearing for January 27, 2015, despite the previous Order filed April 25, 2011, which terminated juvenile court supervision?

Brief of Appellant at 4.

As an initial matter, we must first address whether the law of the case doctrine bars our consideration of CYF's claims.

The law of the case doctrine [sets forth various rules that] embody the concept that a court involved in the later phases of a litigated matter should not reopen questions decided by another judge of that same court or by a higher court in the earlier phases of the matter.

***Ario v. Reliance Ins. Co.***, 980 A.2d 588, 597 (Pa. 2009). At issue is whether this Court's disposition of the prior appeal at No. 29 MDA 2012 precludes consideration of the issues presented in CYF's present appeal.

Our review of the record discloses that this Court has never ruled on the underlying merits of the issues now presented by CYF. On January 27,

2012, this Court issued a Rule to Show Cause why the appeal at No. 29 MDA 2012 should not be dismissed as interlocutory. CYF filed its response to the Rule, claiming that the Order was appealable as a collateral order. On February 15, 2012, this Court dismissed appeal as interlocutory, because the juvenile court's Order "neither makes nor denies a disposition and expressly contemplates further proceedings." *In the Interest of: S.J., A Minor*, No. 29 MDA 2012 (Order) (Pa. Super. filed on February 2, 2012).

In the present appeal, CYF claims that the juvenile court erred when it denied CYF's request to terminate the court's jurisdiction over the dependency/SPLC matter. Brief of Appellant at 11. CYF claims that the juvenile court's April 25, 2011 Order "removed any actual case or controversy from the purview of the [c]ourt[,] and rendered any further proceedings before the [c]ourt moot." *Id.* CYF also argues that the juvenile court failed to apply this Court's holding in *In re S.H.*, 71 A.3d 973 (Pa. Super. 2013), when it scheduled additional status review hearings. Brief of Appellant at 20.

Our review discloses that when this Court quashed the appeal at No. 29 MDA 2012, the Court did not render a decision as to whether an actual case or controversy existed in the dependency/SPLC proceedings. This Court also did not address whether the juvenile court's jurisdiction had terminated, or should be terminated. Because this Court never addressed

the claims now raised by CYF, the law of the case doctrine is inapplicable. *See Ario*, 980 A.2d at 597.

CYF first claims that no actual case or controversy remained before the juvenile court following the entry of its April 25, 2011 Order. Brief of Appellant at 11. CYF points out that all parties had reached an agreement that it would be in Child's best interest to change the permanency goal from reunification to subsidized permanent legal custodianship. *Id.* CYF states that after the finalization of the SPLC paperwork, and upon CYF's Motion, the juvenile court entered its April 25, 2011 Order terminating the adjudication of dependency. *Id.* at 14. As a result, CYF argues, the juvenile court terminated CYF's services and the court's supervision over the dependency/SPLC matter. *Id.* Although the juvenile court has expressed its regrets over having entered that Order, CYF asserts that no actual claim or controversy in the dependency/SPLC matter has existed since April 25, 2011. *Id.* at 14-15. In support of its argument, CYF directs our attention to this Court's holding in *In re S.H.* Brief of Appellant at 17.

In *In re S.H.*, this Court interpreted section 6351(a)(2.1) of the Juvenile Act, which provides, in relevant part, as follows:

> **(a) General rule.—**If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:
>
> * * *

- 7 -

> (2.1) Subject to conditions and limitations as the court prescribes, transfer permanent legal custody to an individual resident in or outside this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child. A court order under this paragraph may set forth the temporary visitation rights of the parents. The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.

42 Pa.C.S.A. § 6351(a)(2.1). This Court explained that,

> [b]y using the term "permanent" in describing legal custody, **the legislature intended to end the supervision of the children by the county agency and discontinue the case from periodic reviews in the juvenile court division**. This language does not confer or divest parents of any substantive rights but rather addresses the proper venue for visitation and support matters following the grant of a permanent legal custody arrangement.
>
> * * *
>
> . . . We find that neither the Juvenile Act nor the Adoption and Safe Families [A]ct of 1997 prohibit a parent from petitioning the [juvenile] court to regain custody of a child who is the subject of an award of permanent legal custody.

*In re S.H.*, 71 A.3d at 978-79 (emphasis in original).

In view of the statutory interpretation provided in *In re S.H.*, we cannot agree with the juvenile court's view that this appeal should be quashed. Our review discloses that, upon entry of the April 25, 2011 Order, no case or controversy remained in the dependency/SPLC proceedings. The April 25, 2011 Order expressly terminated the juvenile court's jurisdiction over the dependency/SPLC proceedings. In the absence of any remaining

case or controversy, we conclude that the juvenile court erred by continuing its supervision in the dependency/SPLC matter.

Because no case or controversy existed in the dependency/SPLC matter after the juvenile court's April 25, 2011 Order, we reverse the juvenile court's February 11, 2014 Order, and remand with instructions.[5] On remand, the juvenile court is directed to cancel the review hearing scheduled for January 27, 2015.

Order reversed; case remanded with instructions; Superior Court jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/27/2014

---

[5] As the juvenile court's jurisdiction in the dependency/SPLC matter terminated as a result of its April 25, 2011 Order, a second order terminating jurisdiction is not necessary. All dependency/SPLC proceedings since April 25, 2011 are a nullity, as the juvenile court lacked jurisdiction in the absence of a case or controversy.