J-A03015-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.A., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: B. T., MOTHER | : | No. 3097 EDA 2017 |

Appeal from the Order Entered September 12, 2017
In the Court of Common Pleas of Montgomery County
Juvenile Division at No(s):  CP-46-DP-0000112-2012

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY GANTMAN, P.J.:          **FILED FEBRUARY 16, 2018**

Appellant, B.T. ("Mother"), appeals from the order entered in the Montgomery County Court of Common Pleas Juvenile Court Division, which granted the petition of the Montgomery County Office of Children and Youth ("Agency") to place S.A. ("Child") in the permanent legal custody of her foster mother and terminate supervision of Agency and the juvenile court. We affirm.

In its opinion, the juvenile court fully and correctly sets forth the relevant facts and procedural history of this case.  Therefore, we have no reason to restate them.

Mother raises the following issue for our review:

> WHETHER THE [TRIAL] COURT ERRED IN GRANTING THE AGENCY'S MOTION TO TERMINATE COURT JURISIDICTION IN THIS MATTER, AND ORDER[ING] THAT LEGAL AND PHYSICAL CUSTODY OF THE MINOR CHILD BE TRANSFERRED TO THE PERMANENT LEGAL CUSTODIAN?

_____
*   Retired Senior Judge assigned to the Superior Court.

(Mother's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Wendy Demchick-Alloy, we conclude Mother's issue merits no relief. The juvenile court's opinion comprehensively discusses and properly disposes of the question presented. (*See* Juvenile Court Opinion, filed October 16, 2017, at 1-7) (finding: evidence of record supports order that granting permanent legal custody to foster mother is in best interest of Child; during discussion with Child prior to September 12, 2017, hearing, Child expressed stress she felt when visiting with her biological parents; Child has been in foster care for six years; during her time in foster care, Child has earnestly participated in psychological counseling; while in foster care, Child has gained familial bond with foster mother, friendships with peers, and excelled in school). Accordingly, we affirm, on the basis of the juvenile court's opinion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/16/18

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

JUVENILE COURT

In the interest of S.A.  :  No. CP-46-DP-0000112-2012

### OPINION

DEMCHICK-ALLOY, J.  OCTOBER 13, 2017

B. T., the biological mother of S.A., appeals from the order filed September 12, 2017, placing S.A. in the permanent legal custody of her foster mother and terminating the supervision of the Montgomery County Office of Children and Youth and the juvenile court. In this children's fast-track appeal, Mother raises a single issue: whether the undersigned erred in terminating court supervision and ordering permanent legal custody to S.A.'s foster mother.

### Facts

On April 19, 2012, the Montgomery County Office of Children and Youth (OCY) took S.A. into custody.[1] S.A. had reported that her father sexually abused her, but then reported that those accusations were false and prompted by her mother ( B.T. ).[2] S.A. then stated that her mother did not prompt her to make false accusations against her father.[3] On May 8, 2012, S.A.'s parents agreed to an order adjudicating her dependent.[4] After OCY found no relatives who could care for S.A., the undersigned removed her from the home she

---

[1] See N.T. July 7, 2012, p. 6.
[2] See N.T. May 8, 2012, pp. 3-4.
[3] *Id.*
[4] *Id.*

shared with Mother and directed OCY to place her in foster care.[5] Father cooperated with OCY, but was unable to name any family members with who could care for S.A.; Mother, on the other hand, refused to cooperate.[6]

Before S.A. had been adjudicated dependent, her parents were engaged in a child-custody proceeding in family court. As a result, both parents had been ordered on April 4, 2011 to submit to psychological and psychiatric examinations and complete parenting classes.[7] In the dependency proceeding in juvenile court on May 8, 2012, the undersigned ordered both parents to undergo psychological evaluations.[8] Months later, after Mother failed to comply, she argued in court that her psychological fitness as a parent was not at issue, given that her daughter had been removed from her home because of allegations against her husband, not her.[9] Meanwhile, father had already completed his psychological evaluation and cooperated in every way possible with OCY.[10] Not until April of 2017 did Mother complete the parenting class, and not until July of 2017 did she complete the court-ordered psychological evaluation.[11] She still has not completed a court-ordered psychiatric evaluation.

During the hearing of September 12, 2017, OCY produced case-worker

---

[5] *Id.* at 4.
[6] *Id.* at 3-4.
[7] N.T. September 12, 2017, p. 11.
[8] N.T. May 8, 2012, p. 5.
[9] See N.T. July 24, 2012, pp. 10-12.
[10] *Id.* at 14.
[11] N.T. September 12, 2017, pp. 7-8.

Jerrold Summers as a witness. Mr. Summers testified that when OCY took custody of S.A. in 2012 she had been fighting and running away from school.[12] Over the ensuing years S.A. worked diligently with counselors and her foster mother, and now earns "straight A's" as a middle-school student in a competitive school district.[13] She no longer has any behavioral problems.[14] Mr. Summers testified that S.A. wants to remain in her foster home with her foster mother and her dog, Rocky.[15]

At the request of the juvenile and her guardian *at litem*, the undersigned and the lawyers in this dependency proceeding also met with S.A. in the anteroom of the courtroom. The discussion between the undersigned and S.A. was not stenographically recorded.[16] During the meeting, S.A. corroborated Mr. Summers's testimony by stating that she wished to remain with her foster mother.[17] She expressed, without animosity, the anxiety she felt when visiting with her father and biological mother.[18] She did not want to give up visits with her parents, but she wanted reassurance that she would remain in the custody of her foster mother.[19]

Mr. Summers was the only witness who testified regarding Mother. He testified that in the four to five months preceding the hearing of September 12,

[12] *Id.* at 10.
[13] *Id.* at 11-12, 18-19.
[14] *Id.* at 12.
[15] *Id.* at 12, 18-19.
[16] See *id.* at 24-25.
[17] *Id.* at 26.
[18] *Id.*
[19] *See id.* at 29-30 (summary of S.A.'s statement by guardian ad-litem for S.A.).

3

2017, she began to comply with the family plan.[20] Mother began to visit S.A. more consistently,[21] and she contacted Mr. Summer by telephone on two or three occasions.[22] She asked Mr. Summer for more visitation time with S.A., and OCY granted her request.[23] On cross-examination by Mother's lawyer, Mr. Summers reluctantly agreed that she "substantially, perhaps moderately" complied with the family plan.[24] He described Mother as having made "substantial gains" in the preceding months, but he also opined, "it's too little, too late."[25] The undersigned is inclined to agree with the case-worker's opinion, based upon the first-hand knowledge. The undersigned has presided over this dependency action since its inception and has observed S.A. and spoken with her numerous times during the course of the hearings. Based upon the testimony produced in all of the hearings and the observations of the undersigned, it is clear that Mother's recent improvement does not support a conclusion that S.A.'s best interest would be served by further delaying a decision as to permanent legal custody.

## Discussion

The Superior Court neatly summarized the rules applicable to this case in *In re S.H.*, 71 A.3d 973 (Pa. Super. Ct. 2013).

In Pennsylvania, a juvenile court may award permanent legal

---

[20] *Id.* at 18.
[21] *Id.* at 18, 19-20.
[22] *Id.* at 12, 16, 20.
[23] *Id.* at 13.
[24] *Id.*
[25] *Id.* at 11.

4

custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated. *See In re H.V.*, 37 A.3d 588, 589 (Pa.Super.2012).

\* \* \*

A trial court may consider permanent legal custody, upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if subsidized permanent legal custodianship (SPLC) were granted. *See In re S.B.*, 208 Pa.Super. 21, 943 A.2d 973, 983–984 (2008). Upon receipt of this petition, the court must conduct a hearing and make specific findings focusing on the best interests of the child. *See id.* In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare. *See id.; see also* 42 Pa.Cons.Stat.Ann. § 6351(f.1).

*In re S.H.*, 71 A.3d 973, 977-78 (Pa. Super. Ct. 2013).

An order granting "permanent" legal custody "does not confer or divest parents of any substantive rights but rather addresses the proper **venue** for visitation and support matters following the grant of a permanent legal custody arrangement." *Id.* at 979 (bold emphasis in original). Following a grant of permanent legal custody, the venue for a parent's petition to regain custody changes from juvenile court to family court. *See id.* at 980 (quoting 23 Pa.C.S. §§ 5324 and 5338). Because parental rights are not terminated by an order declaring the custodianship permanent, the fitness of the mother or father to be a parent is relevant, but only to whether reunification or adoption is not in the best interest of the child. The Office of Children and Youth must prove that reunification or adoption is not best suited to the child's safety, protection and

5

physical, mental and moral welfare, but it need not prove more. *Id.* at 980 (quoting *In re B.S.,* 861 A.2d 974, 977 (Pa. Super. Ct. 2004)).

The evidence in this case supports the conclusion that the order granting permanent legal custody to the foster mother the best interests of S.A. In the anteroom discussion, S.A. shared the stress she feels when visiting with her biological parents in a manner that was eloquent, articulate, respectful, and completely without animosity. S.A. has been in foster care for six years, and during that time she has earnestly participated in difficult psychological counseling. Mainly as a result of her diligence and courage in confronting her own issues, but with the help of her counselors and foster mother, S.A. has been rewarded with the growth of family bonds with her foster mother, friendship with her peers and academic success. To leave her uncertain as whether she will continue to enjoy her relationships with her foster mother and friends would not be in her best interest. S.A. must be able to trust that these relationships will not be lightly upended.

## CONCLUSION

Upon consideration of the foregoing discussion, the undersigned respectfully submits that the order filed September 12, 2017 should be affirmed.

BY THE COURT,

Wendy Demchick-Alloy, Judge

6

**Copy of above sent on** _10/13/17_ **to:**

Erin C. Lentz-McMahon, Esquire; 21 West Airy Street; Norristown, PA 19401; by first-class mail

Eric J. Cox, Assistant Solicitor and Alisa Levine, Assistant Solicitor; by inter-office mail

Kara Humphries, Esquire; c/o Public Defender; by inter-office mail

John Armstrong, Esquire; 621 Swede Street; Norristown, PA 19401; by first-class mail