J-S09025-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1601 MDA 2017 |

Appeal from the Order Entered September 20, 2017
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-0000144-2015

| | | |
|---|---|---|
| IN THE INTEREST OF: K.H., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: K.H. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1602 MDA 2017 |

Appeal from the Order Entered September 20, 2017
In the Court of Common Pleas of Cumberland County Juvenile Division at
No(s): CP-21-DP-0000146-2015

BEFORE:   GANTMAN, P.J., McLAUGHLIN, J., and PLATT*, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED APRIL 04, 2018**

Appellant K.H. ("Father") appeals from the orders terminating the dependency of two of his biological children, A.H. and K.H., Jr. ("K.H.") (together, "the Children"), and placing them with a relative. Father's counsel

_____
*   Retired Senior Judge assigned to the Superior Court.

has filed an Application for Leave to Withdraw and an **_Anders_**[1] brief, stating that the appeal is wholly frivolous. We affirm the orders of the trial court and grant counsel leave to withdraw.

The underlying facts are as follows:

The Children and another minor sibling were adjudicated dependent on August 6, 2015. Mother and Children had been living with Maternal Grandmother until Mother suffered a catastrophic medical episode which rendered her permanently incapacitated. The Children remained with Maternal Grandmother after Mother was placed in a long-term care facility. They were living with her at the time of the referral and adjudication. Father was not a caregiver at the time of adjudication, nor did he have adequate housing. His involvement in the Children's lives had been sporadic up until the summer of 2015.

[Cumberland County Children and Youth Services ("CYS")] was referred to the family following an incident in which a family friend was charged for hitting the [C]hildren with a belt. A criminal investigation concerning an older sibling's sexual abuse of K.H. was also launched during that time. [CYS] became concerned about unsanitary conditions in the home and Maternal Grandmother's ability to supervise the [C]hildren. She was having difficulty caring for the three children due to her age. Paternal Aunt moved into the home to help Maternal Grandmother with the caregiving and was temporarily given physical and legal custody of all three children. She left the home on December 31, 2015, and Maternal Grandmother was again given physical and legal custody of the three children. On July 17, 2016, Maternal Cousin moved into the home in order to help Maternal Grandmother with the caregiving. She left within a month and [CYS] began to look for foster homes.

---

[1] **_Anders v. California_**, 386 U.S. 738 (1967); **_see also In re J.D.H._**, 171 A.3d 903, 906 (Pa.Super. 2017) (holding "the **_Anders_** procedure should also apply in appeals from goal change orders" as "[p]arents have a right to counsel at every stage of a dependency proceeding").

On November 28, 2016, K.H. and another sibling were accepted into the Milton Hershey School, which required them to reside there. Maternal Grandmother retained legal custody of the children. On January 15, 2017, A.H. was placed in the physical and legal custody of Paternal Aunt.[2] Paternal Aunt stated that she was willing to be a permanent resource for the Children. On April 5, 2017, physical and legal custody of K.H. was also placed with Paternal Aunt.[3] Despite more than two years of Agency involvement, Father remained unable to care for the Children.

Trial Court Opinion, filed Nov. 29, 2017, at 1-2. Father did not appeal the initial adjudication of dependency in 2015 or any of the subsequent placement or custody decisions.

The court held a routine permanency review hearing[4] on September 20, 2017, after the Children had been dependent for 25 months. Prior to the hearing, CYS requested that the permanency goal for the Children be changed to placement with a "fit and willing relative," that the Children remain in the physical and legal custody of Paternal Aunt, and that dependency be terminated. **See** Petition for Permanency Hearing and Dispositional Review Hearing, filed 8/24/17, at 1 (unpaginated). The permanency goal for the Children until that point had been to "return to parent or guardian." **See** Permanency Review Order, 4/5/17, at 3.

_____

[2] Father retained shared legal custody of A.H.

[3] Father retained shared legal custody of K.H.

[4] **See** 42 Pa.C.S.A. § 6351(e) (unless aggravated circumstances exist or are alleged, the court shall conduct permanency review hearings for dependent children at least once every six months until child is returned to his or her parent, guardian, or custodian, or removed from the jurisdiction of the court); **see also** Pa.R.J.C.P. 1608.

At the hearing, the court heard testimony from Gan Fry, the CYS caseworker assigned to the Children's case. Fry testified that Father has repeatedly stated that he does not have adequate housing for the Children, and has refused to provide an address to CYS. *See* N.T., 9/20/17, at 10-11. Father had been visiting with the Children, but not as often as he had previously. *Id.* at 4-5, 12. During one of Father's visits with the Children at Paternal Aunt's home, Paternal Aunt and Father got in a heated argument and Paternal Aunt called the police; Father left before the police arrived. *Id.* at 9. However, Fry testified that Paternal Aunt "is open to the [Children] having continued contact with [Father]." *Id.* at 14. Fry requested that Paternal Aunt be given sole legal custody of the Children. *Id.* at 7. This was because Father had removed Maternal Grandmother from K.H.'s visitation list at school, something he would not be able to do if he did not share legal custody. *Id.* at 8.

Chris Rich, a social worker at the Milton Hershey School, also testified. He stated that Father is on the school's visitation list for the Children, and Father is therefore able to visit the Children at the school during weekends or take the Children home during several long weekends throughout the school year. *Id.* at 19-21.

Father testified that he would not provide CYS with his address because there is no need for a home visit from CYS, as Father has no extra bedroom in which to house the Children. *Id.* at 23. Father stated that he complied with the court's previous order that he take a drug test, but that he had not

attended parenting classes due to a scheduling conflict. *Id.* at 26. Father testified that he is no longer welcome to visit the Children at Paternal Aunt's home due to the disagreement they had, but that he has since visited with the Children at a public location with a bowling alley and laser tag arena. *Id.* at 16. According to Father, he removed Maternal Grandmother from K.H.'s school visitation list because she had failed at protecting the Children while they were in her care. *Id.* at 27.

The Guardian *ad litem* for the Children was also present at the hearing, and stated that she agreed with the recommendations of CYS to give Paternal Aunt sole legal custody. *Id.* at 29.

Paternal Aunt did not formally testify,[5] but the court asked her if she was willing to "work out the visitation with [Father]," and she responded that Father could retrieve the Children for a visit "whenever he wants to." *Id.* at 31. She told the court,

> Never would I ever try to stop him from getting the kids, nor would I ever say, you know, well, if I have custody of the kids, you can't have the kids back. No. My plan has never changed. It's just like I told Gan [Fry]. My plans are to keep the kids until he gets a place for them to live.

*Id.*

At the conclusion of the testimony, Father's court-appointed counsel objected to the goal change and termination of dependency. Counsel argued

_____

[5] *See* 42 Pa.C.S.A. § 6336 (hearings under the Juvenile Act shall be conducted in an informal manner).

briefly that if the court granted sole legal custody to Paternal Aunt, such an order would be a punitive measure against Father and a way to referee the adult relationships rather than an effort to advance the best interests of the Children. *Id.* at 32.

Following the hearing, the court entered separate orders for A.H. and K.H., changing the placement goal to "placement with a fit and willing relative," Paternal Aunt, and entered orders terminating the dependency and court supervision of the Children. *See* Permanency Review Order (A.H.), 9/25/17, at 1-3; Permanency Review Order (K.H.), 9/25/17, at 1-3; Order for Termination of Court Supervision (A.H.), 9/25/17, at 1; Order for Termination of Court Supervision (K.H.), 9/25/17, at 1. The court found that, regarding Father's compliance with the prior permanency plan, Father had been minimally compliant, "in that [Father] has only taken minimal steps towards locating housing to accommodate his children. [Father] has not cooperated with the Agency's request to conduct a home visit and [Father] has not participated in individual mental health counseling." Permanency Review Order (A.H.), at 1; Permanency Review Order (K.H.), at 1. The court stated that it would "encourage dad to visit more often with the [C]hildren," and "[Father] shall remain on the visitation list for [K.H.] . . . at Milton Hershey absent further Order of Court." Permanency Review Order (A.H.), at Additional Findings of Fact; Permanency Review Order (K.H.), at Additional Findings of Fact.

At Father's request, Father's counsel filed a Notice of Appeal.[6] As noted above, counsel thereafter filed an **Anders** brief with this Court and an Application for Leave to Withdraw.

Before assessing the merits of Father's appeal, we must first examine counsel's request to withdraw. **See Commonwealth v. Orellana**, 86 A.3d 877, 879 (Pa.Super. 2014). Counsel who wishes to withdraw must both file **Anders** brief in this Court and provide a copy of that brief to the client. **Id.** at 880. The brief must:

(1)     provide a summary of the procedural history and facts, with citations to the record;

(2)     refer to anything in the record that counsel believes arguably supports the appeal;

(3)     set forth counsel's conclusion that the appeal is frivolous; and

(4)     state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** (quoting **Commonwealth v. Santiago**, 978 A.2d 349, 361 (Pa. 2009)). Counsel must also send a letter "that advises the client of his right to: '(1) retain new counsel to pursue the appeal; (2) proceed *pro se* on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in

---

[6] "An order granting a goal change pursuant to the Juvenile Act, 42 Pa.C.S.A. §§ 6301-6365, is final and appealable." **In re C.J.R.**, 782 A.2d 568, 569 (Pa.Super. 2001) (citation omitted).

addition to the points raised by counsel in the **Anders** brief.'" **Id.** (quoting **Commonwealth v. Nischan**, 928 A.2d 349, 353 (Pa.Super. 2017)).

Following our assessment of counsel's request to withdraw, we "must conduct an independent review of the record to discern if there are any additional, non-frivolous issues overlooked by counsel." **Commonwealth v. Flowers**, 113 A.3d 1246, 1250 (Pa.Super. 2015); **see, e.g., In re X.J.**, 105 A.3d 1, 4-6 (Pa.Super. 2014) (denying application to withdraw where court found, on independent review pursuant to **Flowers**, a meritorious issue overlooked by counsel).

Here, counsel's brief contains the required **Anders** elements. Counsel has restated the facts of the case at reasonable length; has put forth a cogent argument on behalf of Father's appellate issue; has stated his belief that the appeal is frivolous; and has duly articulated the facts and law that have led to his conclusion that the appeal is frivolous. **Orellana**, 86 A.3d at 879. In addition, counsel sent a letter to Father explaining his rights, including his rights to raise issues with this Court *pro se* in support of his appeal. **Id.** at 880. We therefore turn to an independent review of the merits of the appeal and the record as a whole. **Flowers**, 113 A.3d at 1250.

Father's issue, as presented by counsel, is:

Did the trial court abuse its discretion and commit an error of law when it found [Father's] minor [Children] to be no longer dependent, placed the [Children] in the legal and physical custody of a fit and willing relative, and terminated court supervision over the [Children], thereby subjecting [Father] to a *de facto* involuntary termination of his parental rights, which contravened

sections 2511-2521 of the Adoption Act, 23 Pa.C.S. §§ 2511-2521?

*Anders* Br. at 4. Appointed counsel elucidates that, according to Father, because the trial court did not give due regard to the mutual hostility between Father and Paternal Aunt, the court "effectively empowered [P]aternal [A]unt to exercise unrestricted control over [F]ather's access to [the Children]." *Anders* Br. at 7-9. Father maintains that this amounted to a *de facto* termination of Father's parental rights without meeting the requirements for termination of parental rights under the Adoption Act, and it deprives Father of his constitutional right to the care and custody of his children. *Id.* Moreover, Father contends that the court's termination of dependency leaves Father without legal recourse in the Juvenile Act, should Paternal Aunt prevent him from seeing his Children. *Id.* Father has not submitted, *pro se*, any additional arguments to buttress his issue as presented by counsel.

In its Rule 1925(a) Opinion, the trial court explained that it placed Children with Parental Aunt because Father was "unwilling, unready, and unable" to provide a home for the children, whereas a placement with Parental Aunt would foster "the care, protection, and wholesome mental and physical development" of the Children in a "family environment," in accordance with the purpose of the Juvenile Act. *Id.* Trial Ct. Op. at 3-4 (citing 42 Pa.C.S. § 6301(b); *In Re M.L.*, 757 A.2d 849, 851 (Pa. 2000)). The court also expressed that because a fit and willing relative was "ably providing parental care and control, and Agency services were no longer needed, the Children by

statutory definition were no longer dependent." *Id.* at 4. The court also concluded that terminating court supervision would be best for the Children because doing so would allow the Children to prosper "without the interruption of court appearances and government oversight." *Id.* The court explained that it gave Paternal Aunt sole legal and physical custody because Father "has demonstrated alienating behaviors that could compromise the integrity of his children's relationship with their family members," citing, as an example, that Father "removed Maternal Grandmother from the visitation list at K.H.'s school out of personal spite." *Id.* at 4 n.9. The court noted that "Father may revisit the issue of custody at a later time, outside of dependency court." *Id.*

We review an order granting a goal change under the Juvenile Act for an abuse of discretion. *See In re C.J.R.*, 782 A.2d at 569. "When reviewing such a decision we are bound by the facts as found by the trial court unless they are not supported in the record." *Id.* (citations omitted).

The Juvenile Act, in pertinent part, defines a dependent child as one who is "without proper parental care or control" or who is "without a parent, guardian, or legal custodian." *See* 42 Pa.C.S.A. § 6302. After a child has been adjudicated dependent under this definition, the court may enter an order transferring permanent legal custody to a relative who "is found by the court to be qualified to receive and care for the child." *Id.* at § 6351(a)(2.1). In considering a permanent placement for the child, the court may determine that the child shall be placed with a "fit and willing relative in cases where

return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child." *Id.* at § 6351(f.1)(4); *see also In re K.J.*, 27 A.3d 236, 242 (Pa.Super. 2011) ("If the court decides that neither reunification, adoption, or placement with a legal guardian is appropriate, the court may place the child with a fit and willing relative"). The best-interests standard controls the court's decision. *See In re C.J.R.*, 782 A.2d at 569 ("[I]n a change of goal proceeding, the trial court must focus on the child and determine the goal in accordance with the child's best interests and not those of his or her parents"). The court may terminate dependency when "the child has been placed in the physical and legal custody of a fit and willing relative and services from the county agency are no longer needed[.]" Pa.R.J.C.P. 1631(A)(6), (F).

Here, the court amended the placement goal to placing the Children with Paternal Aunt (who already had physical and shared legal custody of the children), as the court found she was a fit and willing relative — an assessment which Father does not dispute. *See Anders* Br. at 8. Due to their placement with Paternal Aunt, and the court's finding that court-ordered services were no longer needed, the Children ceased to fit the definition of dependent under the Juvenile Act, and the court properly closed the case. *See* Pa.R.J.C.P. 1631(A)(6), (F).

Father's argument—that the court's termination of dependency will prevent him from visiting his children and therefore amounts to a *de facto* termination of his parental rights—lacks a reasonable basis in the law. In *In re S.H.*, 71 A.3d 973, 977 (Pa.Super. 2013), we examined Section 6351(a)(2.1) of the Juvenile Act, which allows the Juvenile Court to grant "permanent" legal custody of a dependent child to a non-parent. We noted that if such an award of custody were not challengeable in other divisions of the trial court after the juvenile proceedings had concluded, "that would amount to a *de facto* termination of Mother's and Father's legal and primary physical custodial rights. Our legislature could not have intended that result because the legislature has provided a process to terminate parental rights in separate, specific legislation." *Id.* at 979 (citing 23 Pa.C.S.A. § 2511).

Instead, the less stringent and less "permanent" award of custody under the Juvenile Act "preserve[s] a parent's right to seek primary custody if it serve[s] the best interests of the child." *Id.* at 980. We explained that the Child Custody Act "specifies that, without limitation, a parent of a child may file an action 'for any form of physical custody or legal custody.'" *Id.* (quoting 23 Pa.C.S.A. § 5324). The Act also provides that "'any custody order entered by a court of this Commonwealth' may be modified if it serves the 'best interests of the child.'" *Id.* (quoting 23 Pa.C.S.A. § 5338). We concluded, "Clearly, our legislature did not exclude from parents the right to petition to modify a custody order entered in a dependency proceeding." *Id.* In addition

to the foregoing, we note that Section 6351(a)(2.1) states that "[t]he court shall refer issues related to support and continuing visitation by the parent to **the section of the court of common pleas that regularly determines support and visitation**." 42 Pa.C.S.A. § 6351(a)(2.1) (emphasis added).

Here, while Paternal Aunt currently has full custody of the Children, Father's parental rights have not been affected. *See S.H.*, 71 A.3d at 980. There is nothing preventing Father from pursuing custody or visitation in the appropriate division of the common pleas court under the Child Custody Act. *See* 23 Pa.C.S.A. § 5321-5340; *see also* Pa.R.C.P. 1915.1 *et seq* ("Actions for Custody, Partial Custody and Visitation of Minor Children"). In fact, Paternal Aunt stated that she would not prevent off-site visitation with Father, or challenge Father should he ever seek full physical custody of the Children. The trial court, likewise, encouraged Father to engage more frequently with the Children. Given these circumstances, we agree with counsel's assessment that Father's issue is frivolous.

In sum, we conclude that Father has presented no non-frivolous issues for which relief is due. In addition, we have reviewed the certified record consistent with *Flowers*, 113 A.3d at 1250, and have discovered no additional arguably meritorious issues. We therefore grant counsel's Application for Leave to Withdraw and affirm the orders of the trial court.

Orders affirmed.

Judge Platt joins the memorandum.

President Judge Gantman concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/4/2018