J-S36017-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.M., FATHER | : | No. 1664 EDA 2021 |

Appeal from the Order Entered August 5, 2021
In the Court of Common Pleas of Monroe County
Civil Division at No(s):  30 DP 2019

| | | |
|---|---|---|
| IN THE INTEREST OF: S.M., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: R.M., FATHER | : | No. 1665 EDA 2021 |

Appeal from the Order Entered August 5, 2021
In the Court of Common Pleas of Monroe County
Civil Division at No(s):  31 DP 2019

BEFORE:   LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 20, 2021**

Appellant, R.M. ("Father"), appeals from the orders entered in the Monroe County Court of Common Pleas, which changed the permanency goals for S.I.M. and S.M. ("Children") to subsidized permanent legal custodianship ("SPLC").  We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The trial court set forth the relevant facts and procedural history of this case as follows:

> [Children] have been placed by [the Monroe County Children and Youth Services ("CYS")] with [L.R. ("Maternal Grandmother")] for almost two … years. At the time of the initial dependency, [R.R.] ("Mother") was having problems with drug use. [Children] were living primarily with her, and [Father] had little contact. Father continued to have little contact through CYS while [Children] were in care until recently.
>
> On November 5, 2020, a hearing was held to change the goal to termination of parental rights and adoption ("TPR").[1] At the time, Mother had made no progress on her goals, had moved to South Carolina, and had very little contact with [Children]. Father had little contact with [Children] as well. However, he indicated at that time that he wanted to re-establish a relationship and be considered a resource for [Children] since Mother was not….

(Trial Court Opinion, filed August 5, 2021, at 2).

On April 27, 2021, CYS requested a goal change to SPLC placement with Maternal Grandmother and termination of dependency. A permanency review hearing was held on July 30, 2021, where the following testimony was presented:

> …Father was initially agreeable to SPLC in lieu of TPR, but now wants to pursue reunification.
>
> Father has appropriate housing and income, and there are no concerns for the safety of [Children] if placed in his care. The concern of CYS is that Father has had only sporadic contact with [Children], that they have never lived with

---

[1] The trial court denied CYS's request to change the goal to adoption because Father posed no danger to Children and wanted to maintain a relationship with them but noted that Father had not expressed an intent to take custody of Children.

- 2 -

Father, and only recently had their first overnight stay at Father's residence. Father resides with his wife and adult daughter in close proximity to [Maternal Grandmother] and [Children]. Father explained his delay in being involved and wanting reunification was due to his hope that Mother would get her life together and get [Children] back. He stated that when he realized she would not or could not, that he should step up as the other parent.

(*Id.*)

On August 5, 2021, the court granted CYS's request for goal change to SPLC placement with Maternal Grandmother. Father timely filed separate notices of appeal and concise statements of errors on August 13, 2021. On September 7, 2021, this Court consolidated the appeals *sua sponte*.

Father raises the following issue for our review:

Did the trial court err and abuse its discretion when it determined that giving [SPLC] to … Maternal Grandmother would serve the needs and welfare of the children when [Father] is ready willing and able to take the children; there are not allegations of abuse or neglect concerning Father; Father is speaking with the children every day for a few minutes during the week and visiting all day on the weekends; and the Agency has no concerns regarding [Children's] return to Father?

(Father's Brief at 4).

On appeal, Father argues that since the November 2020 goal change hearing, he has worked diligently to regain custody of Children. Father asserts that he has obtained appropriate housing, maintained stable employment, increased visitation with Children, and fully complied with the CYS Service Plan. Father maintains that he has never posed a danger to Children and has formed a parental bond with them. Father contends that as Children's natural

father who is ready, able and willing to provide stable care for Children, he should not have to fight with Maternal Grandmother for custody. Father concludes that "it is in the best interests of the children that the goal remain reunification with [Father] and [CYS] work toward this goal." (*Id.* at 11). We disagree.

On appeal, goal change decisions are subject to an abuse of discretion standard of review. *In re N.C.*, 909 A.2d 818, 822 (Pa.Super. 2006).

> In order to conclude that the trial court abused its discretion, we must determine that the court's judgment was "manifestly unreasonable," that the court did not apply the law, or that the court's action was "a result of partiality, prejudice, bias or ill will," as shown by the record. We are bound by the trial court's findings of fact that have support in the record. The trial court, not the appellate court, is charged with the responsibilities of evaluating credibility of the witness and resolving any conflicts in the testimony. In carrying out these responsibilities, the trial court is free to believe all, part, or none of the evidence. When the trial court's findings are supported by competent evidence of record, we will affirm, "even if the record could also support an opposite result."

*Id.* at 822-23 (internal citations omitted).

The Juvenile Act controls the disposition of dependent children. *In re R.P.*, 957 A.2d 1205, 1217 (Pa.Super. 2008). Section 6351 provides in relevant part:

> **§ 6351. Disposition of dependent child**
>
> **(a) General rule.**—If the child is found to be a dependent child the court may make any of the following orders of disposition best suited to the safety, protection and physical, mental, and moral welfare of the child:

(1)   Permit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child.

*   *   *

(2.1) Subject to conditions and limitations as the court prescribes, transfer permanent legal custody to an individual resident in or outside this Commonwealth, including any relative, who, after study by the probation officer or other person or agency designated by the court, is found by the court to be qualified to receive and care for the child.  A court order under this paragraph may set forth the temporary visitation rights of the parents.  The court shall refer issues related to support and continuing visitation by the parent to the section of the court of common pleas that regularly determines support and visitation.

*   *   *

**(e)   Permanency hearings.**—

(1)   The court shall conduct a permanency hearing for the purpose of determining or reviewing the permanency plan of the child, the date by which the goal of permanency for the child might be achieved and whether placement continues to be best suited to the safety, protection and physical, mental and moral welfare of the child.   In any permanency hearing held with respect to the child, the court shall consult with the child regarding the child's permanency plan, including the child's desired permanency goal, in a manner appropriate to the child's age and maturity.  If the court does not consult personally with the child, the court shall ensure that the views of the child regarding the permanency plan have been ascertained to the fullest extent possible and communicated to the court by the guardian *ad litem* under section 6311 (relating to guardian *ad litem* for child in court proceedings) or, as

appropriate to the circumstances of the case by the child's counsel, the court-appointed special advocate or other person as designated by the court.

\* \* \*

**(f) Matters to be determined at permanency hearing.**—At each permanency hearing, a court shall determine all of the following:

(1) The continuing necessity for and appropriateness of the placement.

(2) The appropriateness, feasibility and extent of compliance with the permanency plan developed for the child.

(3) The extent of progress made toward alleviating the circumstances which necessitated the original placement.

(4) The appropriateness and feasibility of the current placement goal for the child.

(5) The likely date by which the placement goal for the child might be achieved.

(5.1) Whether reasonable efforts were made to finalize the permanency plan in effect.

(6) Whether the child is safe.

\* \* \*

(9) If the child has been in placement for at least 15 of the last 22 months or the court has determined that aggravated circumstances exist and that reasonable efforts to prevent or eliminate the need to remove the child from the child's parent, guardian or custodian or to preserve and reunify the family need not be made or continue to be made, whether the county agency has filed or

sought to join a petition to terminate parental rights and to identify, recruit, process and approve a qualified family to adopt the child unless:

(i) the child is being cared for by a relative best suited to the physical, mental and moral welfare of the child;

(ii) the county agency has documented a compelling reason for determining that filing a petition to terminate parental rights would not serve the needs and welfare of the child; or

(iii) the child's family has not been provided with necessary services to achieve the safe return to the child's parent, guardian or custodian within the time frames set forth in the permanency plan.

* * *

**(f.1) Additional determination.**—Based upon the determinations made under subsection (f) and all relevant evidence presented at the hearing, the court shall determine one of the following:

(1) If and when the child will be returned to the child's parent, guardian or custodian in cases where the return of the child is best suited to the safety, protection and physical, mental and moral welfare of the child.

(2) If and when the child will be placed for adoption, and the county agency will file for termination of parental rights in cases where return to the child's parent, guardian or custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

(3) If and when the child will be placed with a legal custodian in cases where the return to the child's parent, guardian or custodian or being placed for adoption is not best suited to the safety, protection and physical, mental and moral welfare

of the child.

(4) If and when the child will be placed with a fit and willing relative in cases where return to the child's parent, guardian or custodian, being placed for adoption or being placed with a legal custodian is not best suited to the safety, protection and physical, mental and moral welfare of the child.

\* \* \*

**(g) Court order**.—On the basis of the determination made under subsection (f.1), the court shall order the continuation, modification or termination of placement or other disposition which is best suited to the safety, protection and physical, mental and moral welfare of the child.

42 Pa.C.S.A. § 6351(a), (e), (f), (f.1), (g).

Thus, the Juvenile Act provides that "upon the filing of a petition by a county children and youth agency that alleges the dependent child's current placement is not safe, and the physical, mental, and moral welfare of the child would best be served if [SPLC] were granted," the court can consider SPLC. *In re S.H.*, 71 A.3d 973, 978 (Pa.Super. 2013), *appeal denied*, 622 Pa. 761, 80 A.3d 778 (2013).

In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated….

… In order for the court to declare the custodian a "permanent legal custodian" the court must find that neither reunification nor adoption is best suited to the child's safety, protection and physical, mental and moral welfare.

- 8 -

*Id.* (internal citations omitted).

> Although the agency has the burden to show a goal change would serve the child's best interests, safety, permanency, and well-being of the child must take precedence over **all** other considerations under Section 6351. The parent's rights are secondary in a goal change proceeding.

*In re R.M.G.*, 997 A.2d 339, 347 (Pa.Super. 2010) (internal quotation marks and citations omitted).

Instantly, the court determined that a goal change to SPLC placement was appropriate. The court previously decided adoption was not in Children's best interests because Father posed no danger to Children and had developed a bond with them. Regarding reunification with Father, the court found:

> It was clear that Father had little contact with [Children] prior to dependency, and sporadic visits with them thereafter until April or May of this year. Only very recently has Father made an effort to see [Children] regularly, but for very short periods of time.
>
> [Children] are bonded with [Maternal Grandmother]. They are starting to form a bond with Father, but prefer to live with [Maternal Grandmother]. [Children] have lived with [Maternal Grandmother] for a total of [three and a half] years, the past 22 months of which have been through placement by CYS. Father had little involvement with the [Children] in their lifetimes, even though [Maternal Grandmother] has never kept them from Father. She would also encourage visitation with Father in the future.
>
> If dependency is terminated, and SPLC is started, Father could always seek custody or custodial rights through the courts. Unlike TPR and adoption, placement with [M]aternal [G]randmother and SPLC are not necessarily permanent, nor does it bar Father from seeing the minor children or pursuing custodial rights.

* * *

> [Children] want to stay with Maternal Grandmother, to whom they are bonded. It does not appear [Children] are opposed to spending time with Father, just that they are not ready to live with him full-time. That might be something that changes with time, but not something to be forced right now. Termination of dependency, SPLC, and placement with [M]aternal [G]randmother is in [Children]'s best interests.

(Trial Court Opinion at 2-3, 4). The record supports the court's analysis. On this record, the court properly concluded that neither reunification nor adoption are appropriate based on Children's newly developing relationship with Father, and their preference and comfort with continuing in Maternal Grandmother's care. *See In re S.H., supra*. Thus, we see no abuse of discretion by the court in determining that SPLC placement with Maternal Grandmother serves Children's best interests. *See In re R.M.G., supra*; *In re N.C., supra*. Accordingly, we affirm.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/2021

- 10 -