J-A26008-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF S.J.R.J., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: M.D.K., MOTHER | : : : : : : : | |
| | : | No. 375 WDA 2025 |

Appeal from the Decree Entered March 24, 2025
In the Court of Common Pleas of Fayette County
Orphans' Court at No:  10-ADOPT-2024

BEFORE:  OLSON, J., STABILE, J., and KING, J.

MEMORANDUM BY STABILE, J.:                **FILED: DECEMBER 17, 2025**

T.A. ("Mother") appeals from the March 24, 2025, decree that involuntarily terminated her parental rights to her son, S.J.R.J. ("Child"), born in January of 2023.[1]  We affirm.

We gather the following relevant factual and procedural history from the certified record.  Fayette County Office of Children and Youth Services ("CYS" or "the Agency") became involved with Child at the time of his birth, when he and Mother each tested positive for fentanyl and amphetamines.  **See** N.T., 3/20/25, at 6, 76. CYS also learned that Mother had left the hospital against medical advice after drug paraphernalia was found in her hospital room.  Child

---

[1] By separate decree of the same date, the court involuntarily terminated the parental rights of Child's father, S.J., Sr. ("Father," and collectively with Mother, "Parents").  Father did not appeal or participate in the instant appeal.

remained in the hospital. *See id.* at 6. Thereafter, CYS caseworkers visited Mother's home, but they were "not granted access." *Id.* at 7. The caseworkers observed, however, that the outside of the house was "very cluttered." *Id.* As part of its investigation, CYS also learned that Mother was lacking any items to meet Child's material needs, such as clothing, diapers, or a car seat. *See id.* at 7.

Upon his discharge from the hospital, the Agency obtained emergency protective custody of Child as a result of its concerns regarding Mother's substance abuse, poor parental skills, and unsuitable housing. *See id.* at 6-7. Child was placed in kinship care with his maternal aunt and uncle, with whom his three siblings also resided.[2] *See id.* at 7-8.

---

[2] In November of 2022, Child's kinship parents were awarded subsidized permanent legal custody ("SPLC") of Child's older siblings. *See* N.T., 3/20/25, at 13-14, 29. SPLC has been explained by this Court as follows:

> In Pennsylvania, a juvenile court may award permanent legal custody to a child's caretaker pursuant to Section 6351(a)(2.1) of the Juvenile Act. This is an arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. Parental rights are not terminated. *See In re H.V.*, 37 A.3d 588, 589 (Pa. Super. 2012). The custodian is typically provided a financial subsidy for the child by the local county children and youth agency. The subsidy component is generally an integral component when permanent legal custody is considered a viable option.

*In re S.H.*, 71 A.3d 973, 977-78 (Pa. Super. 2013) (footnote omitted); *see also* 42 Pa.C.S.A. § 6351(a)(2.1).

The court adjudicated Child dependent on February 9, 2023, and, as best we can discern, established his initial permanency goal as reunification. *See id.* at 8. In furtherance of reunification, the Agency initiated a plan with goals focused on, *inter alia*, substance abuse, housing, parenting skills, and visitation. *See id.* at 8-9. These goals remained the same throughout Child's dependency.[3] *See id.* at 23, 47. At the time, Mallory Varndell, the CYS caseworker assigned to Mother's case, was unable to make contact with Mother. *See id.* at 8.

We glean from the record that, approximately four months later, in May of 2023, Mother became incarcerated on a parole violation and pleaded guilty to crimes involving illegal drugs, *inter alia*. *See id.* at 75-76, 80. Mother remained incarcerated for a total of approximately eleven months until April of 2024. *See id.* at 72, 80. Mother was re-incarcerated from August of 2024 until November of 2024, due to another parole violation. *See id.* at 33, 45, 48, 52-53.

The record reveals that, while incarcerated, Mother appeared in-person for a permanency review hearing in August of 2023. Following the hearing, Ms. Varndell met with Mother for the first time and discussed her court-ordered goals under the permanency plan. *See id.* at 8, 10. Additionally, we

___

[3] Additionally, these goals mirrored those assigned to Mother when her three older children were adjudicated dependent prior to Child's birth. See N.T., 3/20/25, at 13-14, 29, 74-75.

note that in March of 2024, Mother participated in a meeting with the Agency for the purpose of reviewing her goals. *See id.* at 10-11.

On February 6, 2024, while Mother remained incarcerated, the Agency filed a petition for the involuntary termination of Mother's parental rights pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). The court ultimately held a hearing on the Agency's petition on March 20, 2025, at which time Child was two years old.[4] The Agency presented the testimony of its caseworkers: Ms. Varndell, Michael Dascoli, Christy Shaw, and Jeffrey Knox.[5] Mother was present, represented by counsel, and testified on her own behalf.

---

[4] Our Supreme Court has held that "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in conformity with" 23 Pa.C.S.A. § 2313(a). *In re Adoption of K.M.G.*, 240 A.3d 1218, 1235 (Pa. 2020). Further, if the GAL is appointed to the dual role of representing a child's best and legal interests, "appellate courts should review *sua sponte* whether the orphans' court made a determination" that the child's legal interests and best interests "did not conflict." *Id.* In this case, because Child was two years old, the court did not appoint separate legal counsel for him. We discern no error. *See In re T.S.*, 192 A.3d 1080, 1092-93 (Pa. 2018) (holding, "if the preferred outcome of a child is incapable of ascertainment because the child is very young and pre-verbal, there can be no conflict between the child's legal interests and his or her best interests; as such, the mandate of Section 2313(a) of the Adoption Act" is satisfied.).

[5] Ms. Shaw, a permanency specialist who signed the subject petition on behalf of the Agency, indicated that she was testifying from the record for the period of time Tessa Sible served as caseworker, June 15 to August 15, 2024, as Ms. Sible was on education leave at the time of the subject hearing. *See* N.T., 3/20/25, at 29.

She also presented the testimony of her cousin, L.B. At the time of the hearing, Mother remained on parole until May 15, 2025. **_See id._** at 79.

By decree dated March 20, 2025, and recorded on March 24, 2025, the orphans' court involuntarily terminated Mother's parental rights to Child pursuant to 23 Pa.C.S.A. § 2511(a)(1), (2), (5), (8), and (b). Thereafter, on March 28, 2025, Mother timely filed a notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). In response, the orphans' court issued a Rule 1925(a) opinion dated June 17, 2025.

> On appeal, Mother presents the following issues for our review:
>
> 1. Did the [orphans'] court abuse its discretion in terminating the parental rights of [Mother] as [the Agency] failed to present sufficient evidence to sustain its burden of proof?
>
> 2. Whether the [orphans'] court erred by basing its decision to terminate [Mother's] parental rights on Mother's failure to exercise her parental duties during a period of less than four months between the birth of the child in January of 2023 and Mother's incarceration in May of 2023?
>
> 3. Whether the [orphans'] court erred by terminating [Mother's] parental rights to this child when Mother's other three children were placed with the same caregivers under [SPLC]?

Mother's Brief at 3.[6]

Our standard of review in cases concerning the involuntary termination of parental rights "is limited to a determination of whether the decree . . . is

---

[6] Child's GAL has not filed a participant's brief with this Court.

- 5 -

supported by competent evidence." ***Interest of M.E.***, 283 A.3d 820, 829 (Pa. Super. 2022) (internal citations and quotation marks omitted). We have further reiterated:

> When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.
>
> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

***Id.*** at 829-30 (internal citations and quotation marks omitted).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. ***Id.*** at 830; ***see also*** 23 Pa.C.S.A. § 2511(a)(1)-(11). If the

orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b). This Court need only agree with the trial court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re K.R.*, 200 A.3d 969, 979 (Pa. Super. 2018) (*en banc*) (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Accordingly, we analyze the decrees involuntarily terminating Mother's parental rights to Children pursuant to Section 2511(a)(8) and (b),[7] which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and

---

[7] Given our disposition relative to Section 2511(a)(8), we need not review and make no conclusions as to the orphans' court's findings with respect to Section 2511(a)(1), (2), and (5). *See K.R.*, 200 A.3d at 979 (observing this Court may review one subsection of Section 2511(a) "[w]ithout considering the orphans' court's determinations" under any other subsection).

termination of parental rights would best serve the needs and welfare of the child.

. . .

**(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(8), (b).

In order to satisfy Section 2511(a)(8), the petitioner must prove that: (1) the child has been removed from the parent's care for at least 12 months; (2) the conditions which led to the removal or placement still exist; and (3) termination of parental rights would best serve the needs and welfare of the child. *See In re Adoption of J.N.M.*, 177 A.3d 937, 943 (Pa. Super. 2018). Section 2511(a)(8) does not necessitate an evaluation of a parent's willingness or ability to remedy the conditions that led to the removal of the child. *See In re M.A.B.*, 166 A.3d 434, 446 (Pa. Super. 2017). Rather, our inquiry is focused upon whether the "conditions" which led to a child's removal or placement have been "remedied" such that "reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). This Court has acknowledged:

[T]he application of Section (a)(8) may seem harsh when the parent has begun to make progress toward resolving the problems that had led to removal of her children. By allowing for termination when the conditions that led to removal continue to exist after a year, the statute implicitly recognizes that a child's life cannot be held in abeyance while the parent is unable to perform the actions necessary to assume parenting responsibilities. This Court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future. Indeed, we work under statutory and case law that contemplates only a short period of time, to wit eighteen months, in which to **complete** the process of either reunification or adoption for a child who has been placed in foster care.

*Id*. at 11-12 (emphasis in original; internal citations omitted).

Finally, this Court has explained that,

while both Section 2511(a)(8) and Section 2511(b) direct us to evaluate the "needs and welfare of the child," we are required to resolve the analysis relative to Section 2511(a)(8), prior to addressing the "needs and welfare" of [the child], as proscribed by Section 2511(b); as such, they are distinct in that we must address Section 2511(a) before reaching Section 2511(b).

*In re Adoption of C.L.G.*, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*) (cleaned up).

Section 2511(b) gives "primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. We remain mindful that "the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis," with an eye towards "each child's specific needs." *Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023). This inquiry is neither formulaic, nor mechanical. *See id.*

Our review must include consideration of the bond between the parent and the child. *See In re E.M.*, 620 A.2d 481, 485 (Pa. 1993). Our Supreme Court has explained, however, that "only a necessary and beneficial" parental bond should be maintained. *K.T.*, 296 A.3d at 1109. A bond is considered to be "necessary and beneficial" if its severance would cause "extreme emotional consequences" or significant, irreparable harm. *Id.* at 1109-10. The evaluation of a child's respective bonds is "not always an easy task." *Id.* at 1106 (citation omitted). However, "[i]n cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists. The extent of any bond analysis, therefore, necessarily depends on the circumstances of the particular case." *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) (citation omitted).

Additionally, it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents. *M.E.*, 283 A.3d at 839 (cleaned up). Courts should also consider "whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *K.T.*, 296 A.3d at 1106. Finally, we also note that a child's "emotional needs and welfare include intangibles, such as love, comfort, security, and stability." *Id.*

In her first and second issues, Mother argues that the evidence was insufficient to support the termination of her parental rights pursuant to Section 2511(a)(8). *See* Mother's Brief at 19. Specifically, Mother asserts

that the conditions which led to Child's placement no longer exist because she has allegedly been maintaining sobriety, keeping a clean home, and is demonstrating appropriate parenting skills. *See id.* Mother's second issue is related, wherein she contends that the court abused its discretion by considering her conduct only during the first four months of Child's placement, which were from January of 2023 to May of 2023, when she was not incarcerated, and failed to participate in her permanency goals to any extent. *See id.* at 20-21. Finally, Mother challenges the orphans' court's findings with respect to the third prong of Section 2511(a)(8), wherein she asserts that a bond exists between her and Child and, therefore, terminating her parental rights does not serve Child's needs and welfare. *See id.* at 19. For the following reasons, we discern no abuse of discretion.

In its Rule 1925(a) opinion, the orphans' court found as follows with respect to her failure to remedy the conditions that led to Child's removal:

> It is appear to the [c]ourt that the parents have a long history of drug abuse and addiction. Mother was incarcerated for a period . . . . [Mother] cannot properly take responsibility for the care and services this child deserves and requires. [Mother] failed in that necessary time frame to properly control and treat [her] addiction, [Mother] did not visit consistently , . . . , an [Mother] failed to maintain stable housing. In addition, despite repeated attempts to reach out to [Mother, she] refused to comply with the family service plan . . . .

Orphans' Court Opinion, 6/16/25, at 8. The court also determined that termination would serve Child's "needs and welfare." *Id.* at 9. For the following reasons, we discern no abuse of discretion in the court's findings.

With respect to Mother's substance abuse, Ms. Varndell testified that, in approximately March of 2024, Mother participated in a drug and alcohol re-entry program, while incarcerated. **See** N.T., 3/20/25, at 11. After Mother's release from prison in April of 2024, the record reveals that Mother commenced outpatient drug and alcohol treatment at Axiom but was discharged "for missing appointments." **See id.** at 31-32, 73. According to Ms. Shaw, after the intervention of Mother's parole officer, Axiom reinstated Mother in June of 2024. **See id.** at 33. However, Ms. Shaw testified that, at that time, Axiom referred Mother "to a higher level of care due to failure to maintain appropriate medication management within the outpatient setting. She was referred for inpatient treatment. . . . She did not attend inpatient treatment." **Id.** at 32. As a result, Axiom unsuccessfully discharged Mother from its program on July 30, 2024. **See id.** Thereafter, Mother violated her parole in August of 2024, and was sent to an inpatient drug and alcohol rehabilitation facility, where she remained until November of 2024. **See id.** at 45, 52. Upon discharge, Mother re-engaged in treatment at Axiom. **See id.** at 53, 65-66, 73-74.

Mother testified during the subject proceeding that she continues to attend treatment at Axiom, and that she has not tested positive for illegal drugs through its program in the last six months. **See id.** at 66-67. However, the current Agency caseworker, Mr. Knox, had no documentation to confirm the length of time Mother had been sober, if at all. **Id.** at 53.

Moreover, to the extent that the record reveals Mother was in substance abuse treatment since her release from prison in November 2024, it is important to note that the orphans' court was prohibited from considering it because Mother's efforts were initiated after July 3, 2024, when she received notice of the involuntary termination petition. *See* 23 Pa.C.S.A. § 2511(b) ("With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition."); *see also* N.T., 3/20/25, at 31.

As to Mother's housing goal, the Agency caseworkers all testified unequivocally that she has failed to make any advancement throughout Child's dependency. *See* N.T., 3/20/25, at 10, 23, 34, 44. In addition, at the time of the hearing, Mother was residing with Father and his mother, but Mother had not offered this living arrangement to the Agency as appropriate for Child. *See id.* at 44, 75.

Lastly, concerning Mother's goal to participate in a parenting skills program, both Ms. Varndell and Mr. Dascoli revealed that Mother did not engage in parenting education **prior** to the service of the subject petition. *See id.* at 12, 23. Rather, Mother testified to completion of some parenting services through a prison parole re-entry program at a time unspecified in 2024. *See id.* at 69-70. Nevertheless, Mother acknowledged that she received no indication from CYS that this satisfied the parenting goal. *See id.*

at 78, 80-81. Moreover, even if these services met Mother's parenting goal, it is unclear that they were completed prior to July 3, 2024, and thus able to be considered by the court. *See* 23 Pa.C.S.A. § 2511(b); *see also* N.T., 3/20/25, at 31.

Based upon the foregoing, we observe no abuse of discretion in the orphans' court's findings with respect to the second prong of Section 2511(a)(8). As detailed above, the certified record fully supports the court's conclusions regarding Mother's lack of progress concerning the conditions that existed at the time of Child's removal and were still present at the time of hearing, *i.e.*, substance abuse, housing, and parenting skills. As such, we reject Mother's contention that the orphans' court terminated her parental rights based on her conduct solely within the first four months of Child's placement, prior to her first incarceration.

With respect to the third prong of Section 2511(a)(8), we discern no abuse of discretion by the court in concluding that the termination of Mother's parental rights will "best serve the needs and welfare of Child." Orphans' Court Opinion, 2/16/25, at 9. Contrary to Mother's argument, the record evinces that Child does not share a parent-child bond with Mother. Rather, he shares a parent-child bond with his pre-adoptive kinship parents. *See* N.T., 3/20/25, at 41. Significantly, Mother did not visit with Child for approximately a year-and-a-half after placement. *See id.* at 10-12, 23, 27. Thereafter, both Ms. Shaw and Mr. Knox acknowledged Mother's reports of

- 14 -

informal visitation outside of JusticeWorks. However, both recounted only six total authorized visits through JusticeWorks from June 2024, when initially established, to the time of the subject hearing, almost one year later. *See id.* at 32-33, 38-39, 45-46, 55. As such, Ms. Shaw testified,

> [C]hild has spent his entire life in care and in care with [his kinship parents.] He has never resided with [Mother]. The first year of his life, year-and-a-half, there was very limited visitation, if any, by [Mother]. So[,] there was very little ability to make a connection with [C]hild. His attachments and connections are with his [kinship] family.

*Id.* at 41; *see also id.* at 7-8, 12-13.

Consequently, we conclude that the orphans' court did not abuse its discretion in terminating Mother's parental rights pursuant to Section 2511(a)(8). Indeed, Child has been removed from Mother's care for the entirety of his two years of life, which is well in excess of the statutory 12-month minimum. The conditions which led to Child's removal continue to exist inasmuch as Mother has failed to satisfy her court-ordered goals under the permanency plan relating to substance abuse, appropriate housing, and parenting skills. In addition, the evidence supports the court's conclusion that terminating Mother's parental rights will serve Child's needs and welfare because the parental bond exists between Child and his pre-adoptive kinship parents and not with Mother. As such, Mother's first and second issues are without merit. *See* 23 Pa.C.S.A. § 2511(a)(8).

It is important to note that Mother does not raise an issue in this appeal with respect to Section 2511(b). Therefore, she has waived any claim

regarding it. ***See In re M.Z.T.M.W.***, 163 A.3d 462, 465-66 (Pa. Super. 2017) (citations omitted) (reiterating that "this Court will not review an appellant's claim unless it is developed in the argument section of an appellant's brief[] and supported by citation to relevant authority."). Even if not waived, we would conclude that the court did not abuse its discretion pursuant to Section 2511(b) because, as discussed above in the context of Section 2511(a)(8), the record demonstrates that a parent-child bond does not exist between Mother and Child. Rather, Child shares such a bond with his kinship parents, with whom he has resided since birth.

In her third and final issue, Mother argues that the court abused its discretion in terminating her parental rights when "her other three children were placed with the same" kinship parents under SPLC, which we defined *supra*. Mother's Brief at 22-23. As best we can discern, Mother contends that, unlike her other children, Child's permanency goal is adoption. Mother speculates that,

> as [C]hild grows older in the same home with three siblings, who legally remain the children of Mother, inevitably [C]hild will feel a sense of loss and abandonment as [his older siblings, residing in the same home,] are permitted to strengthen their bond with Mother. In addition, separating out [Child] from his siblings in this way will weaken the bond that [C]hild has with his siblings, as [C]hild will inevitably come to resent the special treatment that his siblings receive over the coming years.

***Id.*** Mother ultimately argues that "the needs and welfare of Child require the same approach that CYS pursued for the other three children," SPLC. ***Id.*** at 23 (cleaned up).

We conclude that Mother's issue is not properly before this Court as Mother's appeal lies from the termination decree, and not from an order on the dependency docket governing Child's permanency plan. *See Interest of S.S.*, 252 A.3d 681, 688 (Pa. Super. 2021) (recognizing that dependency proceedings and termination proceedings are two separate, distinct proceedings "with their own docket numbers, records, and divisions within the Court of Common Pleas."). Thus, as a matter of justiciability, we cannot address Mother's claim for relief.

Accordingly, we affirm the decree involuntarily terminating Mother's parental rights pursuant to Section 2511(a)(8) and (b).

Decree affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/17/2025