J-S37044-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 959 EDA 2025 |

Appeal from the Order Entered March 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000180-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 960 EDA 2025 |

Appeal from the Decree Entered March 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000180-2020

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 962 EDA 2025 |

Appeal from the Order Entered March 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000181-2020

J-S37044-25

| IN THE INTEREST OF: A.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | : | |
| | : | |
| APPEAL OF: C.B., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 963 EDA 2025 |

Appeal from the Order Entered March 17, 2025
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000181-2020

BEFORE:   DUBOW, J., KUNSELMAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:          **FILED JANUARY 30, 2026**

C.B. ("Mother") appeals from the March 17, 2025 orders in the Philadelphia County Court of Common Pleas that vacated the permanent legal custody ("PLC") granted to S.W. ("Maternal Grandmother"), and awarded physical and legal custody of her natural son, K.S., and daughter, A.B., (collectively, "the Children") to W.L.R.S. ("Father").   In addition, Mother appeals from the separate March 17, 2025 custody decrees that returned the Children to the physical and legal custody of Father.   After review, we vacate the orders, in part, and remand.   We further vacate the custody decrees and remand for proceedings consistent with this memorandum.

The relevant factual and procedural history is as follows:   K.B., born in January 2011, and A.B., born in September 2013, were adjudicated dependent

_____

[*] Former Justice specially assigned to the Superior Court.

- 2 -

on March 3, 2020. On March 22, 2022, the juvenile court granted PLC to Maternal Grandmother pursuant to Section 6351(a)(2.1) of the Juvenile Act, 42 Pa.C.S.A. § 6351(a)(2.1).[1] The court further discharged the Children's dependencies and terminated court supervision. By separate orders, pursuant to the same statutory provision, the court awarded Maternal Grandmother primary physical and legal custody of the Children. **See** Unsubsidized PLC Order, 3/22/22. Shortly thereafter, at a time unspecified in the record, Maternal Grandmother became incarcerated and left the Children in the care of Mother. **See** Notes of Testimony ("N.T."), 3/17/25, at 13; N.T., 2/11/25, at 7. The Children remained in Mother's care at the time of the subject hearing, although PLC remained vested in Maternal Grandmother.[2] **See** N.T., 3/17/25, at 8.

On August 7, 2024, Father contemporaneously filed, *pro se*, both a complaint for custody and a petition for modification of a custody order against Mother in the domestic relations branch of the trial court, seeking primary physical and sole legal custody of the Children. The trial court construed

---

[1] Under Pennsylvania law, PLC refers to an "arrangement whereby a juvenile court discontinues court intervention as well as supervision by a county agency, and awards custody of a dependent child, on a permanent basis, to a custodian. **Parental rights are not terminated**." **In re S.H.**, 71 A.3d 973, 977-78 (Pa.Super. 2013) (cleaned up) (emphasis added).

[2] The record reveals that Maternal Grandmother was released from prison on February 10, 2025. **See** N.T., 2/11/25, at 7.

Father's pleadings as a motion to vacate PLC, and, on November 6, 2024, transferred the matter to the juvenile branch for "special guardian motions" proceedings.[3] **See** Custody Docket; Dependency Dockets. On December 11, 2024, the juvenile court issued a rule for the Philadelphia Department of Human Services ("DHS") to show cause as to whether it would serve the best interests of the Children for Maternal Grandmother's PLC award to remain. **See** Rule to Show Cause, 12/11/24.

The court presided over a motions hearing on March 17, 2025, during which Mother, Father, and Maternal Grandmother, along with DHS, appeared and were represented by separate counsel. However, none of the parties produced testimonial or documentary evidence. Rather, Mother's counsel made an offer of proof that, if Mother testified, she would state her preference that the Children reside with Maternal Grandmother. **See** N.T., 3/17/25, at 12. Counsel for Maternal Grandmother proffered, "The only thing I would say at this point is that [Maternal G]randmother's . . . concern is that she have a relationship and that she work with [F]ather with regard to the wellbeing of the [C]hildren." **See id.** at 10. Father's counsel did not make an offer of proof on his behalf. **See id.** at 10-11. Finally, DHS proffered that,

_____

[3] This Court has approved the assignment of petitions to regain custody of a child "who is the subject of an award" of PLC to the juvenile branch of the Philadelphia County Court of Common Pleas, rather than the domestic relations branch, as the juvenile branch would have had experience with the family and, in the juvenile branch, DHS would be a party. **See S.H.**, 71 A.3d at 982-83.

> if [DHS PLC Unit worker, Monique] Allen were called
> to testify, she would . . . testify there are no safety
> issues or concerns in Mother's home, but truancy was
> a big issue with DHS.  Ms. Allen would further testify
> K.S. wants to be in the care of Maternal Grandmother
> and A.B. wants to be in the care of Mother.  Ms. Allen
> would testify DHS's recommendation is [that] the best
> placement for the Children at this time would be with
> Father as he has now resolved his housing issues and
> there are no safety concerns in Father's home.

Juvenile Court Opinion ("J.C.O."), 7/21/25, at 2 (citations to record omitted).

Based on the foregoing offers of proof, the court found Father "fully capable of caring for his children." *Id.* at 13.  By orders dated and entered on March 17, 2025, the court vacated the PLC and awarded Father physical and legal custody of the Children.  In addition, these orders provided that Mother and Maternal Grandmother "shall have liberal unsupervised visits" at the Children's discretion, *inter alia*.  By separate "custody decrees" entered on March 17, 2025, the court "ordered and decreed" that the Children are "returned to the physical and legal custody of" Father.

On April 15, 2025, Mother timely filed separate notices of appeal from both the orders and the custody decrees,[4] along with concise statements of

---

[4] On May 8, 2025, this Court granted Mother's petition to amend the notice of appeal with respect to docket number 960 EDA 2025, and Mother timely complied.

errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b), which this Court consolidated *sua sponte*.[5]

On June 11, 2025, the juvenile court requested that this Court remand the case for it "to address the issue of custody as to the" Children. Letter, 6/11/25. On June 16, 2025, we issued a rule to show cause to the parties with respect to why this appeal should not be remanded to address the issue of custody. Mother and Father responded and advocated against remanding the case to the trial court. DHS did not file a response. On July 2, 2025, this Court discharged the show cause orders. Thereafter, on June 21, 2025, the juvenile court filed a Rule 1925(a) opinion in support of its orders and custody decrees.

_____

[5] On September 2, 2025, DHS filed an application to quash Mother's appeal, arguing that she is not an aggrieved party pursuant to Pa.R.A.P. 501 and therefore lacks standing. Pursuant to Pa.R.A.P. 501, "Except where the right of appeal is enlarged by statute, any party who is aggrieved by an appealable order, or a fiduciary whose estate or trust is so aggrieved, may appeal therefrom." Pa.R.A.P. 501 (Any Aggrieved Party May Appeal). Here, Mother was a named party and participated in all proceedings. *Cf. Walker v. Walker*, 523 A.2d 782, 783 (Pa.Super. 1987) (finding that an appellant who was "not a named party" in a custody action qualified as an "aggrieved party" under Rule 501 due to her participation and "indispensable" involvement in the case). Further, as the Children were residing with Mother for approximately two years prior to the subject orders and decrees entered in favor of Father, we conclude that Mother is indeed an aggrieved party. *See Epstein v. Saul Ewing, LLP*, 7 A.3d 303, 314 (Pa.Super. 2010) ("A party is aggrieved by a ruling when that party has been adversely affected by the decision from which the appeal is taken."); *In re McCune*, 705 A.2d 861, 864 (Pa.Super. 1997) ("An aggrieved party must have a substantial interest at stake," which surpasses "the common interest of all citizens in procuring obedience to the law."). Accordingly, we decline to grant DHS's application to quash.

Mother raises the following issues for our review:

1. Whether the [juvenile] court abused its discretion or committed an error of law in failing to make a best interest determination under 23 Pa.C.S.A. § 5328 and without addressing each enumerated factor in its decision?

2. Whether the [juvenile] court abused its discretion or committed an error of law in determining that [Mother] lacked standing to be awarded physical custody based upon the procedural posture of the case?

3. Whether the [juvenile] court violated [Mother's] due process rights or committed an error of law by issuing a custody decree awarding Father physical and legal custody based upon the "ready, willing, and able" dependency analysis where no dependency petition was filed, no adjudicatory hearing was conducted, the results of the DHS investigation and accompanying recommendation were not provided to appellant in advance of the hearing date, and [Mother] was not provided the opportunity to remedy the alleged truancy issues in her home?

4. Whether the [juvenile] court violated [Mother's] substantive or procedural due process rights under the Pennsylvania or United States Constitution [] in deciding that Father's petition to modify custody, naming only [Mother] as defendant, should be deemed a motion to vacate [Maternal Grandmother's] permanent legal custody ("SG Motion") and be transferred to dependency court for consideration?

5. Whether the [juvenile] court abused its discretion or committed an error of law in denying [Mother's] motion for reconsideration and deciding there were insufficient grounds to establish that the court should reconsider its prior decision based upon newly discovered evidence or an error of law which led to a

> manifest injustice without conducting a hearing
> on the record?

Mother's Brief at 5 (cleaned up; issues reordered for ease of disposition).[6], [7]

Mother's first issue is dispositive, and it implicates a question of law. Therefore, our scope of review is plenary and our standard of review *de novo*. *See S.H.*, 71 A.3d at 976.

_____

[6] Both Father and DHS filed briefs in support of affirming the juvenile court's orders and decrees. Maternal Grandmother did not file a brief or participate in the instant appeal.

[7] We note with disapproval Mother's citation to exhibits not contained within the certified record. Specifically, in the statement of the case section of her brief, Mother cites to exhibits included in a supplemental record compiled by Mother, filed contemporaneously to Mother's reproduced record, and not part of the certified record. *See* Mother's Brief at 7-18. To the extent Mother's supplemental record includes documents not contained within the certified record, we may not consider them. *See Commonwealth v. Preston*, 904 A.2d 1, 6 (Pa.Super. 2006) (*en banc*).

Relatedly, the reproduced record contains the transcripts from the February 11, 2025 hearing, while the certified record does not. Since the veracity of this transcript is not in dispute, we may rely upon the copy in the reproduced record. *See Commonwealth v. Barnett*, 121 A.3d 534, 544 n.3 (Pa.Super. 2015) ("While this Court generally may only consider facts that have been duly certified in the record, where the accuracy of a document is undisputed and contained in the reproduced record, we may consider it.").

We remind counsel, "Appellant has the responsibility to make sure that the record forwarded to an appellate court contains those documents necessary to allow a complete and judicious assessment of the issues raised on appeal." *Commonwealth v. Wint*, 730 A.2d 965, 967 (Pa.Super. 1999) (citations and internal quotation marks omitted); *see also* Pa.R.A.P. 1921 Note (stating, "Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.") (citation omitted).

In **S.H.**, **supra**, this Court recognized that the Child Custody Act ("Act"), 23 Pa.C.S.A. § 5321, *et seq.*, provided that, "without limitation, a parent of a child may file an action for any form of physical custody or legal custody." **S.H.**, 71 A.3d at 980 (citing 23 Pa.C.S.A. § 5324). We continued,

> Moreover, "any custody order entered by a court of this Commonwealth" may be modified if it serves the "best interests of the child." 23 [Pa.C.S.A.] § 5338. Clearly, our legislature did not exclude from parents the right to petition to modify a custody order entered in a dependency proceeding. The language of the statutory sections is plain and unambiguous; the provisions allow for modification of **any** existing custody order **any** time the best interest of the child requires such disposition.

**Id.** at 980-81 (emphasis in original).

In her first issue, Mother asserts that the trial court erred by awarding Father physical and legal custody of the Children and returning them to his care without conducting an evidentiary hearing and fashioning an order in consideration of the best interest factors delineated in Section 5328(a) of the Act. **See** Mother's Brief at 22-32. We are constrained to agree.

In **S.H.**, **supra**, this Court held that a parent may petition the trial court "to regain custody of a child who is the subject of an award of permanent legal custody." **S.H.**, 71 A.3d at 982. We further reiterated that "parents will only be able to obtain primary custody upon a showing that it serves the best interests of the child." **Id.** at 983 n.5.

Here, Father filed custody petitions *pro se* against Mother seeking primary physical and legal custody of the Children. After vacating the PLC,

the juvenile court concluded that the Children were not "dependent" as defined by the Juvenile Act, 42 Pa.C.S.A. § 6302, and returned them to the physical and legal custody of Father. *See* J.C.O. at 2, 6 (stating "there are no underlying dependency issues for Father. . . . Father is ready, willing, and able to care for both of the [C]hildren."). We hold that the court erred in this regard. Rather, the court was required to conduct an evidentiary hearing with Father, Mother, and Maternal Grandmother pursuant to the Act. It follows that the court erred by returning physical and legal custody of the Children to Father without considering all of the best interest custody factors delineated in Section 5328(a) of the Act.[8] *See **R.L. v. M.A.**,* 209 A.3d 391, 395 (Pa.Super. 2019) (stating that the Act requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody.") (citing 23 Pa.C.S.A. § 5328(a)).

Accordingly, we vacate the orders, in part, to the extent that they award Father physical and legal custody of the Children. In addition, we vacate the custody decrees and remand the case. Upon remand, following receipt of the certified record, the court shall conduct an evidentiary hearing with Mother, Father, and Maternal Grandmother and fashion a custody order pursuant to all relevant provisions of the Act. In addition, the court must "delineate the reasons" for its custody award "either on the record or in a written opinion.

---

[8] Given our disposition as to Mother's first issue, we need not review the remainder of Mother's claims on appeal.

Mere recitation of the statute and consideration of the [Section] 5328(a) factors *en masse* is insufficient." **S.W.D. v. S.A.R.**, 96 A.3d 396, 401 (Pa.Super. 2014) (citing 23 Pa.C.S.A. § 5323(a), (d); **C.B. v. J.B.**, 65 A.3d 946, 950 (Pa.Super. 2013)). Finally, the court shall "set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." **C.B.**, 65 A.3d at 955. We direct the Prothonotary of this Court to immediately remit the record to the juvenile court.

Orders vacated, in part. Custody decrees vacated. Case remanded. Jurisdiction relinquished.

Judge Kunselman joins this decision.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/30/2026